2003-NMCA-076

70 P.3d 784

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Eric GALAZ, Defendant–Appellant.**

No. 22,496.

Court of Appeals of New Mexico.

April 21, 2003.

Certiorari Denied, No. 28,063,
June 4, 2003.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant Eric Galaz appeals from an order revoking his probation based on a violation of a condition of probation prohibiting him from possessing "at any time, firearms or other deadly weapons." Bullets were found in Defendant's vehicle. We reverse.

## BACKGROUND

{2} Defendant was on probation following guilty pleas to misdemeanor offenses. A probation employee received information from an anonymous informant that Defendant had a gun in his possession, had shown the gun to two people, and was bragging about selling marijuana and carrying the gun. This information was passed on to Defendant's probation officer, who attempted on two occasions to conduct a search of Defendant's home and vehicle, but the attempts were unsuccessful because no one was home on either occasion. The probation officer spoke to Defendant at a later date when Defendant came to her office for his required monthly report. At that time, Defendant consented to a search of the truck he was driving that day, and the probation officer conducted a search of the truck. The search produced two boxes of .22 caliber rimfire rifle cartridges (bullets). There was evidence Defendant told the probation officer that the bullets belonged to his father and brother and that Defendant's father and brother had borrowed Defendant's truck when they killed a pig with a .22 caliber rifle and had left the bullets in the truck when they returned it to Defendant.

{3} A standard condition of the probation stated: "You will not buy, sell, own or have in your possession, at any time, firearms or other deadly weapons." After a hearing, the district court determined Defendant's posses-

sion of the bullets to be a violation of Defendant's probation and revoked the probation.

## DISCUSSION

{4} The issue is whether the bullets constituted a "firearm" or "deadly weapons." The issue is one of law, applying law to the facts and requiring statutory construction; our review is de novo. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995); *State v. Sergio B.*, 2002–NMCA–070, ¶ 12, 132 N.M. 375, 48 P.3d 764 ("Statutory construction presents a question of law that is reviewed de novo."); *State v. Herrera*, 2001–NMCA–007, ¶ 6, 130 N.M. 85, 18 P.3d 326 (reviewing application of forgery statute to facts of the case de novo).

### Defendant Was Not in Possession of a Firearm

{5} A "firearm" is a weapon from which a shot is fired by gunpowder, or "[a] weapon capable of firing a missile, esp. a pistol or rifle using an explosive charge as a propellant." *Riverside Webster's II New College Dictionary* 421 (Houghton Mifflin Co.1995). A "cartridge" is a tube that contains a complete charge for a firearm, "[a] tubular metal or cardboard and metal case containing the powder and primer of small arms ammunition or shotgun shells," or "[a]n ammunition case fitted with a projectile, as a bullet." *Id.* at 171. A "bullet" is a missile designed to be fired from a firearm, or "[a] spherical or pointed cylindrical metallic projectile fired from a pistol or rifle." *Id.* at 145. Cartridges and bullets are not firearms.

{6} The State contends, however, that the district court was entitled to infer from the evidence that Defendant was in possession of a firearm. More specifically, the State argues that, based on (1) the informant's statement that Defendant possessed a firearm and was bragging about it and (2) Defendant's possession of two boxes of .22 caliber bullets in his vehicle knowing that bullets from these boxes had been used by his father and brother to kill a pig with a .22 caliber rifle, the court could reasonably infer that Defendant had been in possession of a firearm in violation of his probation order.

{7} In order to sustain the result below of probation revocation based on this argument, the State maintains that, in probation proceedings, Defendant's rights are considerably restricted and the district court is considerably less restricted than in a criminal trial as to the proof required for adjudging Defendant in violation of law. The State points out that a probation revocation proceeding is not a criminal prosecution or a trial on a criminal charge, but simply an informal hearing to determine whether the probationer violated a condition of the probation order. *See State v. Sanchez*, 109 N.M. 718, 719, 790 P.2d 515, 516 (Ct.App.1990); *see also* NMSA 1978, § 31–21–15(B) (1989). The State further points out that the proof of a violation need not be beyond a reasonable doubt, but need only establish the violation to a reasonable certainty and satisfy the conscience of the court as to the truth of the violation. *State v. Baca*, 101 N.M. 415, 417, 683 P.2d 970, 972 (Ct.App.1984); *see State v. Martinez*, 108 N.M. 604, 606, 775 P.2d 1321, 1323 (Ct.App. 1989). Thus, the State contends, sufficient evidence existed of possession of a firearm to support the court's revocation order.

{8} Although "proof of a violation of a condition of probation need not be established beyond a reasonable doubt," the proof must be "that which inclines a reasonable and impartial mind to believe that a defendant has violated the terms of probation." *Id.* The evidence argued by the State does not pass this test. The court based revocation on possession of the bullets. Even assuming the informant's statement to be admissible evidence on the issue of probation revocation, no causal link exists between Defendant's alleged possession of and bragging about a firearm, and the bullets. Nor could the court infer from the possession of the bullets that Defendant also possessed a .22 caliber rifle, that Defendant used the rifle that was used to kill the pig, or that Defendant was even present during that event. We hold that Defendant's probation could not be lawfully revoked on the ground that he possessed a firearm and was thereby in violation of the probation order.

### The Bullets Were Not Deadly Weapons

{9} The State's contention that the bullets were deadly weapons is based on

NMSA 1978, § 30–1–12(B) (1963), which defines "deadly weapon," and on NMSA 1978, § 30–7–16(A) (2001), which states that possession of any firearm or destructive device by a felon is a crime.

{10} Section 30–1–12(B) reads:

"deadly weapon" means any firearm, whether loaded or unloaded; or *any weapon which is capable of producing death or great bodily harm,* including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including sword-canes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or *any other weapons with which dangerous wounds can be inflicted* [.]

(State's emphasis). The State also draws our attention to *State v. Montano,* 1999–NMCA–023, ¶ 5, 126 N.M. 609, 973 P.2d 861, in which we quoted the definition of "weapon" from *Black's Law Dictionary* 1593 (6th ed.1990) as " '[a]n instrument of offensive or defensive combat, or anything used, or designed to be used, in destroying, defeating, threatening, or injuring a person.' " Considering the statutory language and this definition, the State argues that the definition of "weapon" is broad enough to include bullets.

{11} We disagree. We read Section 30–1–12(B) narrowly. *See State v. Traeger,* 2001–NMSC–022, ¶ 12, 130 N.M. 618, 29 P.3d 518 ("[W]e agree with the Court of Appeals that it effectuates the legislative intent to give Section 30–1–12(B) a narrow construction."). Bullets do not come within the first clause of the statute's definition, which states that " 'deadly weapon' means any firearm, whether loaded or unloaded." The part of Section 30–1–12(B) setting out types of "weapon[s] which [are] capable of producing death or great bodily harm" does not include bullets. A bullet, therefore, can be considered a deadly weapon under Section 30–1–12(B) only if it is reasonable to interpret the last clause, "or any other weapons with which dangerous wounds can be inflicted," to include bullets. We hold that such a construction is unreasonable. Bullets concededly are designed to

be used to injure and they are undoubtedly an integral part of the process of using a firearm. However, we do not interpret the intent behind Section 30–1–12(B) to require the classification of bullets as deadly weapons solely because of their capability of inflicting injury when fired from a firearm, without any more contextual significance. Such a broad construction could subject any person merely carrying a bullet to prosecution under NMSA 1978, § 30–7–2(A) (2001) (unlawful carrying of a deadly weapon). This would be an absurd result. *See State v. Padilla,* 1997–NMSC–022, ¶ 6, 123 N.M. 216, 937 P.2d 492 ("We read statutes to avoid 'absurd or unreasonable results.' " (citation omitted)); *State v. Gutierrez,* 115 N.M. 551, 552, 854 P.2d 878, 879 (Ct.App.1993) (stating "[t]his Court cannot interpret a statute . . . in a way that will produce an absurd result").

{12} The State argues that bullets are destructive devices and therefore deadly weapons based on Section 30–7–16. Under Section 30–7–16(A), it is unlawful for a felon to possess a destructive device. Destructive device includes "any explosive," including a "missile having an explosive . . . charge of more than one-fourth ounce." § 30–7–16(C)(1)(a)(4). With no reference to the record, the State attempts to support its argument by discussing the make up of a "rimfire cartridge" and concluding that the nature of the .22 caliber cartridge makes it a weapon capable of producing death or great bodily harm.

{13} We reject the State's argument for several reasons. First, we will not consider the State's factual predicate, because nothing in the record or the briefs indicates any factual development below in regard to whether the bullets constituted destructive devices. Second, no evidence exists that Defendant was a felon or in violation of Section 30–7–16, and his probation was not revoked based on a violation of Section 30–7–16. Third, an obvious purpose of Section 30–7–16 is to separate felons from destructive devices as defined in the statute. The State strains too much in its effort to fit Section 30–7–16 to the circumstances of this case. Nothing in this section says that destructive devices as defined in the section are deadly weapons.

It would be unreasonable to construe Section 30–7–16 to say that destructive devices as defined in the section are necessarily also deadly weapons as defined in Section 30–1–12(B). Fourth, and most important, as already explained in this opinion, even were the bullets in question to be considered destructive devices under Section 30–7–16, the bullets were not deadly weapons under Section 30–1–12(B).

{14} We hold that Defendant's mere possession of the bullets did not constitute a deadly weapon under Section 30–1–12(B). Consequently, the probation revocation order was not lawfully entered.

**CONCLUSION**

{15} We reverse the district court's order of revocation of Defendant's probation.

{16} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge, and CELIA FOY CASTILLO, Judge.