2007-NMCA-035

154 P.3d 703

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Richard Don NEATHERLIN,
Defendant–Appellant.**

No. 25,729.

Court of Appeals of New Mexico.

Feb. 9, 2007.

Gary K. King, Attorney General, Santa Fe, NM, Steven S. Suttle, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} Defendant appeals his conviction for aggravated battery with a deadly weapon, a third-degree felony. In our review of this case, we are required to determine if the human mouth can be a deadly weapon, pursuant to NMSA 1978, § 30–1–12(B) (1963) (defining "deadly weapon"), and NMSA 1978, § 30–3–5(C) (1969) (explaining felony aggravated battery). We conclude that a jury could reasonably determine that the human mouth is a deadly weapon if the mouth is used in a manner that could cause death or great bodily harm. We hold that sufficient

evidence existed to support the jury's determination in this case. We also conclude that the trial court erred when it refused to give a jury instruction for misdemeanor aggravated battery as a lesser included offense. Thus, we reverse and remand for a new trial in accordance with this opinion.

## I. BACKGROUND

{2} Defendant and Victim were traveling in a vehicle with three other individuals, namely Defendant's wife, Victim's friend, and the driver of the vehicle. At some point, a fight occurred in the vehicle. Testimony at trial yielded widely varying accounts of the fight. Defendant admitted, however, that he bit Victim in the course of the altercation, but Defendant claimed that he did so only in self-defense. The driver of the vehicle testified that he heard Defendant say as he was biting Victim, "I hope you die[;] I hope you die."

{3} Victim was taken to the emergency room, where she was treated for injuries resulting from the fight in the vehicle. Among other injuries, Victim had two bite marks on her left arm—one bite on her upper arm and one on the forearm. In both bites, the skin was broken. Victim recovered from her injuries in about three weeks.

{4} The emergency room doctor offered Victim testing for hepatitis and HIV to determine her possible exposure from the bites inflicted by Defendant. Victim declined the testing at that time, and no evidence was presented indicating whether Victim was later tested. Defendant's blood was not tested by the State. During the course of the State's investigation, however, Defendant admitted that he had hepatitis C, and he said that as a result of the disease, he did not expect to live much longer. In addition, Defendant's wife later testified that Defendant had previously tested positive for hepatitis C and that he had hepatitis C when he bit Victim.

{5} At trial, the doctor provided the following testimony about the nature of hepatitis C. It is a viral illness transmitted primarily by blood through transfusions, needles, and mucosal contact with blood. The virus is

also shed in saliva. Although it is not likely that the virus would be transmitted through a human bite, it is "certainly possible." There are several documented cases in which the only risk factor was exposure through bites. Two percent of those individuals who are exposed to hepatitis C, through saliva or blood, will test positive for the virus as a result. When the virus is transmitted, ninety-five percent of people will have no symptoms; however, twenty percent or more will develop cirrhosis and chronic liver disease, and one to three percent will go on to have liver cancer. Liver cancer caused by hepatitis C can, over a long period of time, result in death.

{6} Defense counsel requested a jury instruction on the lesser offense of misdemeanor aggravated battery. *See* § 30–3–5(B). The trial court denied the misdemeanor instruction; the jury was instructed only on aggravated battery with a deadly weapon. *See* § 30–3–5(C). The State reasoned that by biting Victim, Defendant used his mouth as a weapon to intentionally injure Victim and that Defendant's mouth could have caused death or great bodily harm because he had hepatitis C. The jury returned a verdict of guilty, and this appeal followed.

{7} Defendant makes two arguments. First, he argues that there was insufficient evidence to convict him of aggravated battery with a deadly weapon. Second, Defendant argues that the trial court erred by refusing to instruct the jury regarding the lesser offense of misdemeanor aggravated battery.

## II. STANDARD OF REVIEW

{8} When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the State; we resolve all conflicts and indulge all permissible inferences in favor of the verdict. *State v. Johnson*, 2004–NMSC–029, ¶ 54, 136 N.M. 348, 98 P.3d 998. We must determine if substantial evidence exists to support a verdict of guilt beyond a reasonable doubt with respect to each element necessary for conviction. *Id.* In so doing, we do not reweigh the evidence or substitute our judgment for that of the jury. *State v. Sosa*, 2000–NMSC–036, ¶ 6,

129 N.M. 767, 14 P.3d 32. Sufficiency of the evidence to support a conviction and interpretation of a statute are both questions of law, which are reviewed de novo. *State v. Traeger*, 2001–NMSC–022, ¶ 9, 130 N.M. 618, 29 P.3d 518; *State v. Anaya*, 98 N.M. 211, 212, 647 P.2d 413, 414 (1982); *State v. Shay*, 2004–NMCA–077, ¶ 7, 136 N.M. 8, 94 P.3d 8. The issue of whether Defendant's mouth is a deadly weapon is "one of law, applying law to the facts and requiring statutory construction; our review is de novo." *State v. Galaz*, 2003–NMCA–076, ¶ 4, 133 N.M. 794, 70 P.3d 784.

{9} When reviewing the trial court's denial of a jury instruction, "[w]e view the evidence in the light most favorable to the giving of the requested instruction." *State v. Hill*, 2001–NMCA–094, ¶ 5, 131 N.M. 195, 34 P.3d 139. The question of proper denial of a jury instruction is a mixed question of law and fact, which we review de novo. *State v. Gaines*, 2001–NMSC–036, ¶ 4, 131 N.M. 347, 36 P.3d 438.

## III. DISCUSSION

### A. Sufficiency of the Evidence

{10} Defendant argues first that the State failed to meet its burden of proving, beyond a reasonable doubt, each element of the crime of aggravated battery with a deadly weapon. *See* § 30–3–5(C). Specifically, Defendant contends that the State failed to prove that Defendant used a "deadly weapon."

{11} The term "deadly weapon" is defined as

any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted.

Section 30–1–12(B). Instruments or objects that are specifically listed in Section 30–1–12(B) are considered deadly weapons per se, or as a matter of law. *Traeger,* 2001–NMSC–022, ¶ 10, 130 N.M. 618, 29 P.3d 518. If an instrument or object is not listed, the jury must determine whether the item is a deadly weapon. *Id.* ¶ 12. In making this determination, the jury must decide whether the object or instrument is a "weapon which is capable of producing death or great bodily harm" or a weapon "with which dangerous wounds can be inflicted." Section 30–1–12(B); UJI 14–322 NMRA; *State v. Anderson,* 2001–NMCA–027, ¶ 15, 130 N.M. 295, 24 P.3d 327. The jury considers the circumstances of the case, including the "character of the instrument and the manner of its use." *Anderson,* 2001–NMCA–027, ¶ 16, 130 N.M. 295, 24 P.3d 327 (internal quotation marks and citation omitted); *see also Traeger,* 2001–NMSC–022, ¶ 16, 130 N.M. 618, 29 P.3d 518 ("[T]he question of whether the item is a deadly weapon, given the defendant's use and the character of the item, should be submitted to the jury for a finding of fact.").

{12} The jury is specifically instructed that an instrument or object, used as a weapon by a defendant, can be a deadly weapon only if the jury finds that the instrument, "when used as a weapon, could cause death or great bodily harm." UJI 14–322; *see also Traeger,* 2001–NMSC–022, ¶ 16, 130 N.M. 618, 29 P.3d 518 ("[W]e require that a jury determine, given the defendant's use, if the baseball bat was capable of producing death or great bodily harm." (internal quotation marks and citation omitted)). Thus, in our case, in order to prove that Defendant committed aggravated battery with a deadly weapon, the State was required to show that Defendant's mouth, when used as a weapon, could cause death or great bodily harm. The requisite showing that an object was used as a deadly weapon is often made by the state "while establishing other elements of the crime like intent, motive, method, or the resulting injury." *Traeger,* 2001–NMSC–022, ¶ 16, 130 N.M. 618, 29 P.3d 518.

{13} Defendant argues that New Mexico courts have never considered the human mouth to be a deadly weapon; he asserts that in each relevant New Mexico case, the jury has considered an "external instrumentality, something with which a defendant arms himself." *See id.* ¶ 1 (baseball bat); *State v. Conwell,* 36 N.M. 253, 255, 13 P.2d 554, 555 (1932) (rock); *Anderson,* 2001–NMCA–027, ¶ 7, 130 N.M. 295, 24 P.3d 327 (stick); *State v. Montaño,* 1999–NMCA–023, ¶ 1, 126 N.M. 609, 973 P.2d 861 (brick wall); *State v. Bonham,* 1998–NMCA–178, ¶ 1, 126 N.M. 382, 970 P.2d 154 (trivet), *abrogated on other grounds, Traeger,* 2001–NMSC–022, ¶ 20, 130 N.M. 618, 29 P.3d 518; *State v. Candelaria,* 97 N.M. 64, 65, 636 P.2d 883, 884 (Ct.App.1981) (screwdriver); *State v. Gonzales,* 85 N.M. 780, 781, 517 P.2d 1306, 1307 (Ct.App.1973) (tire tool). Thus, Defendant contends that our precedent precludes, as a matter of law, the jury from considering the human mouth as a weapon. This question is an issue of first impression in New Mexico.

{14} In other jurisdictions, the majority rule is that body parts, i.e., bare fists and teeth, are not considered weapons. *See generally* Vitauts M. Gulbis, Annotation, *Parts of the Human Body, Other Than Feet, as Deadly or Dangerous Weapons for Purposes of Statutes Aggravating Offenses Such as Assault and Robbery,* 8 A.L.R.4th 1268, 1981 WL 167463 (1981 & Supp.2006). In cases that have specifically addressed the mouth or teeth as a weapon, the jurisdictions are split. *Compare United States v. Sturgis,* 48 F.3d 784, 788 (4th Cir.1995) ("[A] jury could reasonably have concluded that [the defendant's] use of his teeth to inflict potentially lethal bite wounds amounted to use of a dangerous weapon."); *United States v. Moore,* 846 F.2d 1163, 1168 (8th Cir.1988) (holding that the defendant's mouth and teeth could be a deadly weapon); *and Brock v. State,* 555 So.2d 285, 287–88 (Ala.Crim.App.1989) (concluding that teeth can be a deadly weapon but ruling that no evidence was presented that the biting in this case had the capacity to result in serious physical injury), *with Commonwealth v. Davis,* 10 Mass.App.Ct. 190, 406 N.E.2d 417, 420 (1980) (holding that teeth and other human body parts should not be considered as dangerous weapons, even on a case-by-case basis); *State v. Bachelor,* 6 Neb.App. 426, 575 N.W.2d 625, 633 (1998) (holding that

teeth are not to be considered a dangerous instrument); *and People v. Owusu*, 93 N.Y.2d 398, 690 N.Y.S.2d 863, 712 N.E.2d 1228, 1229 (1999) (holding that teeth, a body part, do not constitute an "instrument" under the statute (emphasis omitted)). As we explain below, New Mexico statutes and precedent are more in line with those out-of-state cases that hold that the mouth or teeth can be considered a deadly weapon, at least when they are in fact used in a manner that could cause death or great bodily harm.

{15} This Court has previously relied on the definition of "weapon" from *Black's Law Dictionary* 1593 (6th ed. 1990): " 'An instrument of offensive or defensive combat, or anything used, or designed to be used, in destroying, defeating, threatening, or injuring a person.' " *Montaño*, 1999–NMCA–023, ¶ 5, 126 N.M. 609, 973 P.2d 861; *see also Galaz*, 2003–NMCA–076, ¶ 10, 133 N.M. 794, 70 P.3d 784. This definition of "weapon"—anything used to injure a person—is broad enough to include an individual's mouth. *See Montaño*, 1999–NMCA–023, ¶ 5, 126 N.M. 609, 973 P.2d 861 (concluding that this definition is broad enough to include a brick wall). Clearly, the mouth, which includes the teeth and saliva, can be used to injure a person. *See Davis*, 406 N.E.2d at 418 (observing that the defendant bit off a piece of the victim's ear); *Bachelor*, 575 N.W.2d at 627 (observing that the defendant bit off a piece of the victim's nose); *Owusu*, 690 N.Y.S.2d 863, 712 N.E.2d at 1229 (stating that the "defendant bit the victim's finger so severely that nerves were severed"); *see also Moore*, 846 F.2d at 1167 (relying on a doctor's testimony that a human bite, which can be more dangerous than a dog bite, is capable of causing serious infection and "can be a very dangerous form of aggression" (internal quotation marks omitted)). Thus, the question of whether the mouth has been used as a deadly weapon is for the jury. *Montaño*, 1999–NMCA–023, ¶ 6, 126 N.M. 609, 973 P.2d 861 ("Our Courts have long reserved for the fact finder the question of whether an object not specifically listed by statute, when used by a defendant in committing a crime, is a deadly weapon."); *Bonham*, 1998–NMCA–178, ¶ 25, 126 N.M. 382, 970 P.2d 154 (agreeing that the jury instruction "defined a trivet

as a deadly weapon, thereby usurping the jury's function of deciding whether a trivet is a deadly weapon"); *Candelaria*, 97 N.M. at 65, 636 P.2d at 884 (concluding that the victim's testimony was sufficient for the jury to find that a screwdriver was used as a deadly weapon—the defendant held a screwdriver most of the time he was in the victim's home; the defendant was on top of the victim on the kitchen floor; the defendant held the screwdriver to the victim's throat and told her that he was going to kill her); *Gonzales*, 85 N.M. at 781, 517 P.2d at 1307 (stating that the jury can resolve the question of fact regarding the character of a tire tool and its use as a deadly weapon through hearing or viewing descriptions of the tool and its use or through viewing the tool itself when a description of the tool's use is provided). New Mexico cases illustrate that a determination regarding an object's status as a deadly weapon requires a functional inquiry into the manner of use. The test cannot be mechanical or reduced to a question of law. *Sturgis*, 48 F.3d at 788. The jury must determine, under the circumstances of each case, if the defendant used the object in a manner that could cause death or great bodily harm. *See, e.g., id.; Traeger*, 2001–NMSC–022, ¶ 10, 130 N.M. 618, 29 P.3d 518.

{16} The distinction between wielding an object or instrument that is external to the body to cause injury and using one's mouth to cause injury is an unsupportable difference. *See Montaño*, 1999–NMCA–023, ¶ 8, 126 N.M. 609, 973 P.2d 861 (stating that the distinction between wielding a single brick as a weapon and using a brick wall is an "unsupportable difference"). "The aggravated battery statute is directed at preserving the integrity of a person's body against serious injury." *State v. Vallejos*, 2000–NMCA–075, ¶¶ 15, 18, 129 N.M. 424, 9 P.3d 668 (discussing double jeopardy). Thus, we construe the statute to protect an individual from the possibility of serious injury, regardless of the nature of the instrument used to injure. *See Sturgis*, 48 F.3d at 787 ("[W]hat constitutes a dangerous weapon depends not on the object's intrinsic character but on its capacity, given the manner of its use, to endanger life or inflict serious physical

harm." (internal quotation marks and citation omitted)). "The purpose of aggravating the charge and enhancing the sentence for use of a weapon is to minimize injury to human beings no matter how the injury is inflicted and discourage people from using objects to injure another." *Montaño*, 1999–NMCA–023, ¶ 9, 126 N.M. 609, 973 P.2d 861. With our conclusion today, we serve the purpose of the statute by minimizing the risk of injury from human bites and by discouraging people from using their mouths to injure others. *See Sturgis*, 48 F.3d at 789 ("The assertion that human teeth can never qualify as a dangerous weapon ignores the harm to those on whom these bites were inflicted.").

■ {17} Defendant also argues that even if the mouth could be a deadly weapon for purposes of Sections 30–1–12 and 30–3–5, the evidence is insufficient to prove that Defendant used his mouth as a deadly weapon. As stated earlier, the State did not offer into evidence any medical tests that showed Defendant suffered from hepatitis C. Defendant admitted, however, to having hepatitis C. Moreover, Defendant's wife testified that Defendant was diagnosed with hepatitis C when they got married in 2001 and that Defendant had the disease at the time he bit Victim. In addition, the doctor testified that transmission of the hepatitis C virus is possible through a bite that breaks the skin and that hepatitis C could result in liver cancer, ultimately leading to death. Finally, a witness testified that Defendant, while biting Victim, told Victim that he hoped she would die. From this evidence, the jury could conclude that Defendant used his mouth in a manner that could cause death and that by definition, Defendant's mouth was thus used as a deadly weapon. *See* § 30–1–12(B) (" '[D]eadly weapon' means ... any weapon which is capable of producing death[.]"); *Montaño*, 1999–NMCA–023, ¶ 6, 126 N.M. 609, 973 P.2d 861 ("The determination by the fact finder depends upon the evidence presented about the object and its manner of use."); *see also State v. Kersey*, 120 N.M. 517, 520, 903 P.2d 828, 831 (1995) (stating that an appellate court does not consider "the merit of evidence that may have supported a verdict to the contrary" (internal quotation marks and citation omitted)); *State v. Jones*, 2000–

NMCA–047, ¶ 19, 129 N.M. 165, 3 P.3d 142 (recognizing that spitting or throwing bodily waste may give rise to a rational concern about communicable disease or infection when such battery is committed by a known carrier of disease or infection).

{18} Defendant appears to argue that his mouth could not be a deadly weapon because the prospect of death or great bodily harm was not probable but merely speculative. Defendant's argument fails, however, because it ignores the terms contained in the statute and the jury instruction. The term "capable of producing" is found in the statutory definition of deadly weapon, while the term "could cause" is used in the jury instruction. *Compare* § 30–1–12(B), *with* UJI 14–322. Both terms, however, are similar in that they do not require a certain probability of occurrence, but rather focus on any probability of occurrence. . In our case, the jury was instructed as follows: "The Defendant's mouth is a deadly weapon only if you find that the Defendant's mouth, when used as a weapon, could cause death or great bodily harm[.]"

{19} As discussed in paragraph 5, the State provided evidence that a bite from Defendant could cause death. Defendant admitted and his wife testified that he had hepatitis C. Defendant admitted biting Victim, and evidence showed that Defendant's bites broke the skin. The doctor testified that hepatitis C can be transmitted through saliva, that one to three percent of those testing positive for hepatitis C would go on to have liver cancer, and that liver cancer can cause death. Thus, the jury could determine that Defendant used his mouth as a deadly weapon because the evidence supported a conclusion that Defendant's mouth "could cause death." UJI 14–322. Although it was not likely that Victim would develop liver cancer resulting in death, the potential for death was sufficient to meet the standard enunciated in the statute and the jury instruction. *See Montaño*, 1999–NMCA–023, ¶ 9, 126 N.M. 609, 973 P.2d 861 ("[A]n enhanced penalty can result when use of an object or instrument increases the severity of injury to the victim to the statutorily[ ]required levels.").

{20} Moreover, the State offered evidence that a bite from Defendant could cause great bodily harm. The term "great bodily harm" is defined as "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body." Section 30-1-12(A). Reading the definitions of deadly weapon and great bodily harm together, we note that the definition of deadly weapon includes any weapon that could cause an injury resulting in impairment to the function of an organ of the body. In our case, Defendant's teeth could have caused an injury that resulted in impairment of the liver function. The doctor testified that twenty percent of those testing positive for hepatitis C would develop cirrhosis of the liver. Thus, if Victim were one of those two percent at risk who would test positive for hepatitis C, she would have a twenty percent chance of having impaired liver function. This potential for impaired function resulting from the injury, though arguably small, is sufficient to satisfy the standard found in the statute and the jury instruction. *See* § 30-1-12(B); UJI 14-322; *Moore*, 846 F.2d at 1167 ("[I]t is the *capacity* for harm in the weapon and its use that is significant, not the *actual* harm inflicted.... [The defendant] used his mouth and teeth in a way that *could* have transmitted disease." (citations omitted)). Accordingly, we conclude that an individual's mouth can be considered a weapon pursuant to Sections 30-1-12(B) and 30-3-5(C) and that the question of whether an individual has used his mouth as a "deadly weapon" is strictly a question of fact, reserved for the jury.

## B. Jury Instruction on the Lesser Offense

{21} In regard to his second issue, Defendant contends that the trial court erred by refusing to instruct the jury on the lesser included offense of misdemeanor aggravated battery. *See* § 30-3-5(B). The State concedes that the court erred in denying Defendant a jury instruction on the lesser included offense and that this denial constituted reversible error. However, we are not bound by the State's concession; thus, we examine the issue to reach an independent conclusion. *See State v. Muñiz*, 2003-NMSC-021, ¶ 5, 134 N.M. 152, 74 P.3d 86 (stating that appellate courts have a duty to affirm the trial court if its decision was correct, despite the state's concession of an issue); *see also State v. Martinez*, 1999-NMSC-018, ¶ 26, 127 N.M. 207, 979 P.2d 718 ("[A]ppellate courts in New Mexico are not bound by the [a]ttorney [g]eneral's concession of an issue in a criminal appeal.").

{22} Defendant is entitled to an instruction on the lesser-included offense when a reasonable view of the evidence could lead a fact-finder to conclude that the lesser offense is the highest degree of crime committed. *State v. Brown*, 1998-NMSC-037, ¶ 12, 126 N.M. 338, 969 P.2d 313. "Failure to instruct the jury on a lesser included offense of a charged offense is reversible error if[ ](1) the lesser offense is included in the greater, charged offense; (2) there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed; and (3) the defendant has tendered appropriate instructions preserving the issue." *State v. Jernigan*, 2006-NMSC-003, ¶ 21, 139 N.M. 1, 127 P.3d 537.

{23} Under the facts of our case, misdemeanor aggravated battery is a lesser included offense of aggravated battery with a deadly weapon. An individual commits aggravated battery by unlawfully touching or applying force to the person of another, with an intent to injure. Section 30-3-5(A). Aggravated battery is a misdemeanor when a defendant inflicts "an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body." Section 30-3-5(B). Aggravated battery is a third-degree felony when the battery is committed, inter alia, with a deadly weapon. Section 30-3-5(C). Misdemeanor aggravated battery is not necessarily a lesser included offense of aggravated battery with a deadly weapon because the misdemeanor element of temporary disfigurement, loss, or impairment is not an ele-

ment of aggravated assault with a deadly weapon. *See State v. Meadors*, 121 N.M. 38, 42–43, 908 P.2d 731, 735–36 (1995) (discussing the strict elements approach when the state has requested an instruction on the lesser offense); *State v. Muñoz*, 2004–NMCA–103, ¶¶ 11, 13, 136 N.M. 235, 96 P.3d 796 (discussing the strict elements approach when the defendant has requested an instruction on the lesser offense). However, under the facts of our case—as alleged in the criminal information, supported by the evidence, and argued by the State—Defendant could not have committed felony aggravated battery without also committing the lesser offense. *See Meadors*, 121 N.M. at 43–44, 908 P.2d at 736–37 (concluding that a lesser offense is necessarily included when under the facts alleged in the charging document and supported by the evidence, the defendant could not have committed the greater offense without also committing the lesser offense); *Muñoz*, 2004–NMCA–103, ¶¶ 7, 15, 136 N.M. 235, 96 P.3d 796 (concluding that under the state's theory of the case, the defendant could not have committed the crime of great bodily injury by vehicle without committing the crime of driving while intoxicated); *State v. Darkis*, 2000–NMCA–085, ¶ 15, 129 N.M. 547, 10 P.3d 871 ("[T]he appropriate focus is not merely upon the specific wording of the information, but also on the facts the [s]tate had arrayed and the theory of its case."). Considering the State's theory of our case and the facts as charged and supported by the evidence, the only difference between misdemeanor aggravated battery and felony aggravated battery with a deadly weapon is Defendant's use of a deadly weapon. *Compare* § 30–3–5(B), *with* § 30–3–5(C); *cf. Muñoz*, 2004–NMCA–103, ¶ 17, 136 N.M. 235, 96 P.3d 796 (stating that the only element distinguishing the lesser and greater offenses was sufficiently in dispute). Thus, under these circumstances, misdemeanor aggravated battery is a lesser included offense of aggravated battery with a deadly weapon.

{24} In addition, evidence was presented that tended to establish the lesser included offense. Victim testified regarding several injuries, all of which were healed in three weeks. Further, our review of the record leads us to conclude that a rational factfinder could have determined, based on the evidence, that Defendant did not use a deadly weapon. The State offered no evidence of any permanent disfigurement. Evidence was not presented regarding loss or functional impairment of an organ. The only testimony establishing use of a deadly weapon was the doctor's testimony that Victim had a chance of being exposed to Defendant's disease. The element that distinguished the lesser and greater offenses, use of a deadly weapon, was "sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser." *Darkis*, 2000–NMCA–085, ¶ 14, 129 N.M. 547, 10 P.3d 871 (quoting *Meadors*, 121 N.M. at 44, 908 P.2d at 737). Finally, Defendant properly requested an instruction on misdemeanor aggravated battery as a lesser included offense of felony aggravated battery. For these reasons, we conclude that Defendant was entitled to an instruction on misdemeanor aggravated battery; accordingly, we reverse. *See Meadors*, 121 N.M. at 52, 908 P.2d at 745 (Ransom, J., specially concurring) (discussing the legitimate concern that the lack of an instruction on the lesser crime may result in conviction of the greater offense, even when the lesser offense may be found to be the highest degree of the crime committed, "because acquittal is an alternative that is unacceptable to the jury"); *Darkis*, 2000–NMCA–085, ¶ 20, 129 N.M. 547, 10 P.3d 871 (stating that the defendant's request for an instruction on the lesser offense was "a valid and appropriate defense strategy" because the element at issue was in dispute).

## IV. CONCLUSION

{25} We conclude that an individual's mouth can be a deadly weapon for purposes of the aggravated battery statute and that the ultimate determination depends on the manner of use, which is a question of fact for the jury. We also conclude that sufficient evidence existed to support each element of the crime. We further hold that Defendant

was entitled to a jury instruction on the lesser included offense of misdemeanor aggravated battery. Our determination regarding sufficiency of the evidence precludes any double jeopardy concerns regarding retrial. *See State v. Sanchez,* 2000–NMSC–021, ¶ 30, 129 N.M. 284, 6 P.3d 486. We therefore reverse Defendant's conviction and remand for a new trial in accordance with this opinion.

{26} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CYNTHIA A. FRY, Judges.