This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                   **No. 31,486**

**JEFFREY SWART,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

**{1}** Defendant appeals his conviction of two counts of false imprisonment and one count of battery stemming from a confrontation with two individuals attempting to repossess his vehicle. We affirm.

**BACKGROUND**

**{2}** The charges arose out of Defendant's confrontation with Clinton and Lindi Ishmael (Victims) who had entered Defendant's property to repossess a vehicle. Defendant locked the gates to his property and moved another vehicle in front of Victims' tow truck, thereby preventing them from leaving. Defendant testified he believed he had the authority to detain Victims until law enforcement arrived because Mr. Ishmael had backed his tow truck into Defendant and Mr. Ishmael threw pea gravel at Defendant's head. Victims deny that they backed the tow truck into Defendant or threw gravel at him.

**{3}** A jury convicted Defendant of two counts of false imprisonment and one count of battery. Defendant raises five issues on appeal: (1) whether the district court erred in not submitting a mistake-of-fact instruction to the jury and in submitting a general intent instruction; (2) whether the evidence was sufficient to find Defendant guilty of false imprisonment; (3) whether the evidence was sufficient to find Defendant guilty

of battery; (4) whether the court committed fundamental error when it failed to instruct the jury on citizen's arrest; and (5) whether Defendant received ineffective assistance of counsel when his attorney failed to request a citizen's arrest instruction and failed to adequately investigate the case and interview witnesses prior to trial. We address each argument in turn.

**DISCUSSION**

**Issue 1:  Jury Instructions on Mistake-of-Fact, General Intent**

{4}     Defendant argues that the district court erred in denying his request for a jury instruction on mistake-of-fact.  He also contends that the district court further erred by including false imprisonment as one of the crimes covered by the general intent instruction.

**A.     Mistake-of-Fact Instruction**

{5}     We must first address the State's argument that Defendant failed to preserve this issue for appeal.  Although Defendant requested the jury instruction, it was not in the record.  "The primary purpose of any objection to an instruction is, of course, to alert the mind of the judge to the claimed error contained in it, to the end that he may correct it."  *State v. Compton*, 57 N.M. 227, 236, 257 P.2d 915, 921 (1953).  Consequently, "[t]imely objections to improper instructions must be made or error,

if any, will be regarded as waived in every case." *State v. Garcia*, 46 N.M. 302, 307, 128 P.2d 459, 462 (1942); *see also State v. Cunningham*, 2000-NMSC-009, ¶ 11, 128 N.M. 711, 998 P.2d 176 ("By not invoking the [district] court's discretion with regard to the propriety of the jury instructions, [the defendant] effectively waived appellate review of this issue.").

{6}     Defendant's counsel argued for the mistake-of-fact instruction based on the theory that Defendant believed he had the authority to restrain or confine Victims because he thought a battery had been committed against him and that he was mistaken over the fact of whether he had authority to restrain Victims until police arrived. The State argued that any such mistaken belief is covered by an element of the jury instruction for false imprisonment. The district court responded: "Let's do it that way. Let's look at the elements of false imprisonment and see where we are." He then read the following jury instructions for both victims, which eventually were submitted to the jury, for both counts of false imprisonment.

> For you to find [D]efendant guilty of false imprisonment as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.     [D]efendant restrained or confined Clinton Ishmael (Lindi Ishmael) against his (her) will;

> 2. [D]efendant knew that he had no authority to restrain or confine Clinton Ishmael (Lindi Ishmael);
>
> 3. This happened in New Mexico on or about the 14th day of January[] 2010.

{7} After pointing out that the second element sufficed in addressing Defendant's mistake-of-fact concerns, the following exchange took place between the district court and defense counsel:

> Judge: So I think the State [to prove false imprisonment] has to prove that he had no authority. So I think that would allow you to argue that he had authority.
>
> Defense counsel: Okay, I agree.
>
> Judge: I'm going to leave it the way it is.
>
> Defense counsel: I think I can argue it both ways.
>
> Judge: I'll allow you to argue that he thought he could restrain them because—
>
> Defense counsel: I just like one better.
>
> Judge: Yeah. I'll let you argue it. . . . I think [the false imprisonment instruction is] a good instruction.

{8} Thus, Defendant's counsel agreed with the court that the false imprisonment instruction sufficiently addressed the question of whether Defendant had the authority to detain Victims and that the mistake-of-fact instruction was not needed. In the case

before us, rather than object, defense counsel agreed when the judge rejected the mistake-of-fact instruction as cumulative. We conclude that Defendant has waived any appellate review of the question of whether the district court erred by not submitting a mistake-of-fact instruction to the jury.

**B.     General Intent Instruction**

{9}     We note that there is no indication in the record to show that Defendant made this argument to the district court. Such a lack of preservation dictates the standard of review we employ.

> The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error. Under both standards we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction.

*State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted). "[I]nstructions must be considered as a whole, and not singly[.]" *State v. Parish*, 118 N.M. 39, 41, 878 P.2d 988, 990 (1994) (internal quotation marks and citation omitted). The doctrine of fundamental error exists only "for the protection of those whose innocence appears indisputabl[e], or open to such question that it would shock the conscience to permit the conviction to stand." *Cunningham*, 2000-NMSC-009, ¶ 13 (internal quotation marks and citation

omitted). We will reverse for fundamental error when the foundation or basis of a defendant's case or an essential right in a defense is affected. *Id.*

{10} Here, Defendant's innocence does not appear indisputable; nor would his conviction shock the conscience of the court or represent a "miscarriage of justice." *State v. Maestas*, 2007-NMSC-001, ¶ 8, 140 N.M. 836, 149 P.3d 933. Defendant was permitted at trial to argue his theory that he thought he had the authority to detain Victims, and the burden was on the State to prove that Defendant did not have such authority. The jury heard both arguments and chose to reject Defendant's version of events. We find that there was no fundamental error.

{11} This Court has also been asked to determine whether a reasonable juror would have found the general intent instruction along with the two false imprisonment instructions contradictory and confusing. In addition to the instruction on false imprisonment, the district court submitted the following general intent instruction to the jury:

> In addition to the other elements of false imprisonment (2 counts) and battery, the [S]tate must prove to your satisfaction beyond a reasonable doubt that . . . [D]efendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful. Whether [D]efendant acted intentionally may be inferred from all of the surrounding circumstances, such as the

6

manner in which he acts, the means used, his conduct[,] and any statements made by him.

{12} False imprisonment is the *intentional* confining or restraining of another without that person's consent and with the knowledge on the part of the one restraining that he or she has no authority to confine or restrain. *See* NMSA 1978, § 30-4-3 (1963). The general intent instruction submitted to the jury properly conveys the requirement of an intentional act and comported with UJI 14-141 NMRA. The first use note for that instruction states: "This instruction must be used with every crime except for the relatively few crimes not requiring criminal intent or those crimes in which the intent is specified in the statute or instruction." *Id.*

{13} Jurors were instructed on the elements of false imprisonment and were further instructed that they were required to find that Defendant acted intentionally. The general intent instruction stated at the outset that the jury had to find that Defendant had to have acted intentionally "[i]n addition to the other elements of false imprisonment[.]"

{14} We reject Defendant's position that the general intent instruction was inconsistent with the false imprisonment instructions. There is no rational basis to the argument that the combination of the false imprisonment instructions and the general intent instruction would create confusion for a reasonable juror, and there is no

7

evidence of jury confusion here resulting from what were, in fact, complementary instructions.

**Issues 2 and 3: Sufficiency of the Evidence to Convict for False Imprisonment and Battery**

**A.      False Imprisonment**

{15}      One of the issues before the jury was whether Defendant acted with knowledge that he did not have lawful authority to detain Victims.  Whether there is sufficient evidence to support a conviction is a question of law that we review de novo.  *State v. Neatherlin*, 2007-NMCA-035, ¶ 8, 141 N.M. 328, 154 P.3d 703.  "We must determine [whether] substantial evidence exists to support a verdict of guilt beyond a reasonable doubt with respect to each element necessary for conviction."  *Id*.  "In reviewing the sufficiency of the evidence, [the appellate courts] must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict."  *Cunningham*, 2000-NMSC-009, ¶ 26.  Both direct and circumstantial evidence may be considered when determining whether there is substantial evidence to establish an element of a particular crime.  *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86.  In so doing, the appellate courts do not reweigh the evidence or substitute our judgment for that of the jury.  *State v. Treadway*, 2006-NMSC-008, ¶

8

7, 139 N.M. 167, 130 P.3d 746. "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{16} Under the facts of this case, the State had to prove beyond a reasonable doubt that Defendant restrained or confined Victims against their wills; that Defendant knew that he had no authority to restrain or confine Victims; and that it happened in New Mexico on or about the 14th day of January, 2010. *See* UJI 14-401 NMRA. Sheriff's Deputy Floyd Foutz and Defendant both testified that Defendant acknowledged and admitted that he confined Victims within his property. There was no dispute on the date of the incident. Victims affirmed that Defendant had closed and locked the gate, which prevented them from leaving. We conclude that substantial evidence supported the element of restraining or confining Victims against their wills.

{17} As to the second element of false imprisonment, Defendant asserted that he believed he had authority to restrain or confine Victims. There was conflicting testimony about the attempted repossession presented at trial. Defendant contended that Victims did not have the paperwork to justify the repossession of his vehicle; that Victims were trespassing; and that he had been assaulted twice when Mr. Ishmael threw pea gravel at him and when Mr. Ishmael hit Defendant with the tow lift of his

9

truck. Victims contended that they provided the pertinent paperwork to Defendant's wife, who in turn provided it to Defendant. According to Victims, Defendant crumpled it as he walked back to his house, then took the papers in the house with the can of pepper spray. A title loan company representative brought over additional copies of the paperwork. Victims also claim that they entered the property through an unlocked open gate. There was also testimony that Defendant was irate and yelling during the altercation. Defendant pepper sprayed Mr. Ishmael two times.

{18} Deputy Foutz found inconsistencies with Defendant's account of what happened during the repossession of his vehicle and stated that the evidence found at the scene did not corroborate Defendant's version of the story. Deputy Foutz did not charge Victims with any crimes. There were also credibility issues raised regarding Defendant's account that Mr. Ishmael had a 14- to 16-inch pipe in his tow truck with which he threatened Defendant; which gate Victims drove through; whether Victims broke the lock on the gate; whether Defendant's wife was shoved; and whether Defendant's wife's coat was thrown to the ground. The car was ultimately repossessed.

{19} Consequently, in reaching its verdict, the jury was required to evaluate the credibility of each witness, determine the weight given to each witness's testimony,

10

consider the admitted exhibits, and reach its verdict accordingly. The jury had sufficient basis on which to infer that Defendant knew he did not have authority to detain Victims. We therefore conclude that there was sufficient evidence to support Defendant's convictions for false imprisonment.

**B.     Battery**

{20}     Defendant argues that he acted in self-defense and that the State failed to present sufficient evidence to support a battery conviction. Defendant then proceeds to direct this Court's attention to *State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482, which discusses the fact-finder's role in considering the testimony of the witnesses.

{21}     The third element of the jury instruction on battery required that the jury find beyond a reasonable doubt that Defendant did not act in self-defense. Defendant asserted that he was acting in self-defense when he pepper-sprayed Victim because Victim was threatening him with a pipe. Defendant's self-defense argument was considered by the jury by virtue of this instruction. The district court noted that Defendant's self-defense argument was considered by the jury in the battery instruction. Defense counsel did not object or otherwise comment on the court's

11

point. We conclude that there was sufficient evidence to support Defendant's conviction for battery.

**Issue 4: Jury Instruction on Citizen's Arrest**

{22} Defendant contends that even though he did not offer a jury instruction on citizen's arrest, it was the district court's responsibility to ensure that the jury was properly instructed on the essential elements of the crime. Defendant argued that he had the right to detain Victims until police arrived, because he believed a crime had been committed against him. Based on this belief, Defendant argues that the district court, *sua sponte*, should have given an instruction on citizen's arrest to the jury.

{23} This argument returns us to the jury instructions on false imprisonment, covering both Victims, particularly the second element: that Defendant knew he had no authority to restrain or confine Victims. The State had the burden of proving, beyond a reasonable doubt, that Defendant did not know he had such authority. Defendant's argument to the jury would have been that he had the authority to detain Victims until law enforcement arrived because he believed a crime had been committed against him. The jury would then decide which version to believe. Thus, a citizen's arrest instruction would have been cumulative of the false imprisonment instruction.

12

**{24}** "The [district] court need not . . . offer duplicate instructions if the instructions given adequately apprise the jury of the controlling law." *State v. Bunce*, 116 N.M. 284, 287, 861 P.2d 965, 968 (1993); *see State v. Nozie*, 2007-NMCA-131, ¶ 11, 142 N.M. 626, 168 P.3d 756.

**Issue 5: Ineffective Assistance of Counsel**

**A.     Defense Counsel's Failure to Request a Citizen's Arrest Jury Instruction**

**{25}** Defendant argues that he was provided ineffective assistance of counsel when his attorney failed to request a citizen's arrest instruction, as that was clearly his defense. Moreover, Defendant contends that if the jury had believed his claim, the jury would have been instructed to find him not guilty.

**{26}** Defendant must show that counsel's performance fell below that of a reasonably competent attorney and that Defendant was prejudiced by the deficient performance. *State v. Nguyen*, 2008-NMCA-073, ¶ 28, 144 N.M. 197, 185 P.3d 368. The burden of proof is on Defendant to prove both prongs. *Id.* Counsel is presumed competent. *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127. A remand for an evidentiary hearing is appropriate only when the record on appeal establishes a prima facie case of ineffective assistance of counsel. *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517. "A prima facie case is made out when: (1) it appears

13

from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *State ex rel. Children, Youth & Families Dep't v. David F.*, 1996-NMCA-018, ¶ 20, 121 N.M. 341, 911 P.2d 235. "Without such prima facie evidence, the Court presumes that defense counsel's performance fell within the range of reasonable representation." *Arrendondo*, 2012-NMSC-013, ¶ 38.

**{27}** This matter goes back to our discussion in Issue 4 and relating to the district court's failure, *sua sponte*, to instruct the jury on citizen's arrest. Without reiterating the discussion, such an instruction would have been cumulative of the false imprisonment instructions. Therefore, we cannot conclude that defense counsel acted unreasonably. The failure to request a citizen's arrest jury instruction did not rise to the level of ineffective assistance of counsel.

**B.      Trial Attorney's Failure to Adequately Prepare for Trial**

14

{28} Defendant also argues that his trial counsel failed to adequately prepare for trial by failing to interview necessary witnesses before trial. Defendant also recognizes that there is nothing in the record to substantiate his claim.

{29} "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]" *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61; *see also Arrendondo*, 2012-NMSC-013, ¶ 38 ("The record is frequently insufficient to establish whether an action taken by defense counsel was reasonable or if it caused prejudice. Thus, instead of remanding the matter to the [district] court, [the Supreme Court] prefers that these claims be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions." (citation omitted)).

{30} In the case before us, it would be more appropriate for Defendant to raise his claim of ineffective assistance of counsel for failure to interview particular witnesses prior to trial through a writ of habeas corpus.

**CONCLUSION**

{31} For the foregoing reasons, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**JONATHAN B. SUTIN, Judge**

16