1997–NMCA–007

932 P.2d 1075

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Maribelle BOLTON a/k/a Mrs. Robert H. "Dusty" Bolton and Richard Smrt, Defendants–Appellees.**

No. 17247.

Court of Appeals of New Mexico.

Dec. 27, 1996.

Tom Udall, Attorney General, John H. Clough, Ass't Attorney General, Santa Fe, for Plaintiff–Appellant.

Richard A. Winterbottom, Stout & Winterbottom, Albuquerque, Anthony J. Williams, Los Lunas, for Appellee Bolton.

Joseph N. Riggs III, Albuquerque, for Appellee Smrt.

## OPINION

PICKARD, Judge.

(1.) This case raises issues concerning the respective roles of courts and prosecutors when prosecutors wish to dismiss criminal charges and then refile them at a later date. Ordinarily, prosecutors may file nolle prosequis and subsequently file new charges based on the same incident at will. The rule is otherwise, however, under certain circumstances. The issue facing us today is whether those circumstances are limited to times when prosecutors have bad reasons for their actions or whether those circumstances include whenever prosecutors simply do not have good reasons for their actions.

(2.) In a long line of cases, our appellate courts have held that trial courts may and should interfere with prosecutorial discretion when prosecutors have bad reasons for their actions. The lone exception to this line of cases is *State v. Lucero*, 108 N.M. 548, 775 P.2d 750 (Ct.App.1989), *cert. quashed*, 108 N.M. 582, 775 P.2d 1299 (1989), in which we appeared to hold that courts have a duty to intervene when prosecutors act negligently and therefore do not have good reasons for their actions. We take this opportunity to explain *Lucero* and put it into context. We hold that courts should intervene only when prosecutors have bad reasons for their actions. Accordingly, we reverse the trial court's dismissal of the charges against Defendants.

*Background*

(3.) The State appeals from the trial court's dismissal of charges against these Defendants for violation of their rights under the six-month rule, NMRA 1996, 5–604. Defendants were charged with various violations of the criminal statutes relating to elections. The original grand jury indictment was filed in November 1994, and Defendants filed waivers of arraignment that same month. Under NMRA 5–604, the six-month rule would expire in May 1995.

(4.) Defendants were a Republican County Commissioner and the Republican County Chair in Valencia County. The District Attorney at all relevant times was Democrat Mike Runnels. In November and December 1994, there was abundant publicity concerning the charges. There were also allegations that the charges were politically motivated. Mr. Runnels testified that the charges were not politically motivated, that he resented the allegations that they were politically motivated, and that he was reluctant to let newspaper allegations influence his handling of cases under his authority.

(5.) Among other motions, Defendants moved to dismiss the original indictment in January 1995. Grounds for the motion to dismiss included that there was an unauthorized person in the grand jury room during the testimony of a witness. *See Davis v. Traub,* 90 N.M. 498, 501, 565 P.2d 1015, 1018 (1977) (presence of unauthorized person in grand jury room fatally taints indictment). The State filed responses to these motions in February, and the motions were set for hearing in March. Mr. Runnels testified that people in his office were of differing opinions on the merit of Defendants' motions. The hearing scheduled for March was postponed several times. Trial was set in May, and the hearing on the motions was finally scheduled for the Thursday before the Monday that the trial was set to begin.

(6.) Mr. Runnels cancelled the hearing set for Thursday and filed nolle prosequis on Friday. He acknowledged that he had not subpoenaed any of his witnesses, but testified that he was ready to go to trial. He said that the reason he filed the nolle prosequis was that he ultimately decided that the case should be handled by a special prosecutor to avoid the appearance of any political motivation. He said that the reason he had not dismissed the case earlier was stubbornness on his part. Although he denied that the reason he dismissed was the defect in the grand jury proceedings, he testified that the dismissal "also took care of that problem."

(7.) A special prosecutor was appointed, and Defendants were re-indicted in September. They filed motions to dismiss alleging that their rights under the six-month rule were violated. After a hearing the trial court found that, although he probably would have dismissed the first indictments because of the unauthorized-person issue, that issue played no part in the prosecutor's decision to file the nolle prosequis. The court accepted the parties' agreement that no new charges were involved in the second indictment and that no new evidence prompted its filing. The court found that the prosecutor's decision was motivated by his belief that it would be better to have a special prosecutor, and that the prosecutor in good faith believed this. However, the court found that subjec-tive good faith was not the issue; rather, there had to be a good legal reason for the dismissal and refiling of charges. Because there was no actual conflict of interest and because there were no other reasons that the prosecutor actually had for dismissing the first indictment, the trial court dismissed the second indictment.

*Discussion*

■ (8.) The issue we must decide in this case is whether the general rule for courts to apply in this situation is stated in *State ex rel. Delgado v. Stanley,* 83 N.M. 626, 627, 495 P.2d 1073, 1074 (1972), or in *Lucero,* 108 N.M. at 550–51, 775 P.2d at 752–53. *Delgado* was the first case to decide the issue of how to resolve conflict between the policies supported by the six-month rule (efficient management of criminal prosecutions so that neither the public nor defendant suffers undue delay) and usual prosecutorial discretion in deciding how to manage criminal prosecutions. *Delgado* recognized the reality that:

in the prosecution of criminal cases, because of fluctuations in the stories of witnesses, the unavailability and subsequent reappearance of witnesses, because of newly discovered evidence or for any one of numerous other good and sufficient reasons, a criminal prosecution may be terminated and subsequently reinstituted.

*Delgado,* 83 N.M. at 627, 495 P.2d at 1074. However, *Delgado* also decided that in cases of conflict between this usual prosecutorial discretion and claims of six-month rule violations, defendants could claim that prosecutors were exercising discretion to circumvent the six-month rule in which case the State would bear the burden of demonstrating the bona fides of its procedure and that its actions were not taken to circumvent the six-month rule. Thus, *Delgado* states a general rule of prosecutorial discretion which defendants may challenge by making an appropriate showing.

(9.) *Lucero,* on the other hand, was interpreted by the trial court, and indeed appears, to state a general rule that the starting point in the analysis of one of these issues is not prosecutorial discretion. Rather, the starting point in the analysis of an issue of conflict

between the six-month rule and prosecutorial action in dismissing and refiling charges is whether the charges appear the same. *Lucero* appears to say that, if the charges are the same, the six-month rule will run from the initiation of the first prosecution unless some exception applies. *Lucero* expressed two exceptions—that the charges were in fact different or that the charges were based on new or different evidence. The court below articulated another exception supported by our case law—that the defendant entered a pre-prosecution diversion plan pursuant to which the charges were dismissed. *See State v. Altherr,* 117 N.M. 403, 406, 872 P.2d 376, 379 (Ct.App.), *cert. denied,* 117 N.M. 524, 873 P.2d 270 (1994). Reasoning from these cases, the trial court allowed the possibility that other exceptions may equally exist, such as when the prosecutor dismisses charges that are procedurally defective and the procedural defect is legally sustainable and is the articulated reason for the dismissal. Thus, *Lucero* appears to state a general rule circumscribing prosecutorial actions unless certain exceptions apply.

(10.) A close reading of *Delgado, Lucero,* and other cases on this issue shows that the *Delgado* analysis is the correct analysis to apply, that *Lucero* does not state the general rule, and that *Lucero* is simply a particular application of the general rule that is to be used in limited circumstances. That the general rule is stated by *Delgado* and not *Lucero* is demonstrated by our most recent cases on this issue—*State v. Mayfield,* 122 N.M. 298, 923 P.2d 1183 (Ct.App.), *cert. denied,* 122 N.M. 194, 922 P.2d 576 (1996), and *State v. Coburn,* 120 N.M. 214, 900 P.2d 963 (Ct. App.), *cert. denied,* 120 N.M. 68, 898 P.2d 120 (1995). In *Coburn,* 120 N.M. at 217, 900 P.2d at 966, this Court stated, "Our review of these [prior] cases shows that a literal application of SCRA 5–604(B) will be set aside only when there is an event extending pre-trial activity to the mutual benefit of the parties, or where there is an attempt by the State to circumvent the rule without justification." In *Mayfield,* 122 N.M. at 301, 923 P.2d at 1186, this Court stated, "A party must show that the State filed a nolle prosequi to circumvent the rule, as opposed to simply remedying defects underlying the

original indictment," citing *Coburn,* 120 N.M. at 217, 900 P.2d at 966, for the proposition that "[D]elay, standing alone, will not justify dismissal in the absence of a showing that the State intentionally tried to circumvent the six-month rule."

(11.) These cases therefore demonstrate the validity of *Delgado* as the general rule. Prosecutors may ordinarily do what they wish—unless there is a bad reason for what they do, in which event the court will supervise it in a way that might prevent the prosecution. How, then, does *Lucero* fit into this formulation? We suggested in *Coburn* that *Lucero* was a case in which the prosecutor was impermissibly using the six-month-rule triggering events to get an extension of time. 120 N.M. at 216, 900 P.2d at 965. We now expressly hold that *Lucero* does not stand for the proposition that courts are permitted to supervise whenever there is negligence, carelessness, or stubbornness on the part of the prosecutor, as Defendants argue. Rather, *Lucero* applied its particular analysis because the reason for dismissal in *Lucero* was prima facie a bad reason that is ordinarily used to circumvent the six-month rule. The case was called to trial; the prosecutor was not prepared with his witnesses; and the court dismissed. *Lucero,* 108 N.M. at 549, 775 P.2d at 751. When the reason for dismissal is a lack of preparedness, which is the precise thing the six-month rule is supposed to guard against, then *Lucero's* analysis will apply and the case should be dismissed unless the prosecutor can offer a good reason for taking the action. Under any other circumstances, however, *Delgado's* analysis will apply and the case should be dismissed only when the prosecutor cannot demonstrate that the reason for dismissing was not a bad one. Of course, the foregoing analysis applies only to the technical matter of six-month rule violations. Where that rule is satisfied, but a defendant nonetheless has concerns about delay, those concerns should be directed to a constitutional speedy-trial claim. *Coburn,* 120 N.M. at 217, 900 P.2d at 966.

(12.) We next apply the appropriate analysis to this case. In doing so, we first resolve disputes between the parties as to the appropriate burdens below and the ap-

propriate standard of review on appeal. The State claims that, to invoke a *Delgado* analysis, defendants must offer evidence to support their claim that the State is using nolle prosequis for improper purposes. We disagree if, by evidence, the State means a full-blown evidentiary hearing with witnesses required. The factual basis for a *Delgado* claim is generally contained in the records of a particular case and predecessor cases. We do not believe that defendants need to go through any particular formalities in raising this type of issue unless there is a challenge to the accuracy of the facts they rely on in their motions. According to *Delgado*, defendants need only make a claim that the State's purpose in dismissing and refiling is to circumvent the six-month rule. That claim can be shown by allegations based on court records. *Cf. State v. Beck*, 97 N.M. 312, 313–14, 639 P.2d 599, 600–01 (Ct.App.1982) (evidence not required when rule permits a showing); *see Delgado*, 83 N.M. at 627, 495 P.2d at 1074 (issue is raised when defendant "asserts").

■ (13.) Defendants claim the standard of review for this issue is a substantial evidence standard while the State claims that the standard is de novo because the issue involves mixed questions of law and fact. Neither party is entirely right. We agree with the State that the issue involves mixed questions of law and fact. According to *State v. Attaway*, 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994), such questions are reviewed in accordance with what is being decided. The deference of the substantial evidence standard is accorded to the trial court when the trial court is deciding questions of historical fact. In this case, such questions include what really motivated the prosecutor in dismissing the case and whether his actions were taken in subjective good faith. On the other hand, a de novo standard is applied to determine the type of reasons that will justify a dismissal without NMRA 5–604 sanctions or the type of analysis that should be utilized in these cases. *Attaway*, 117 N.M. at 144–45, 870 P.2d at 106–07.

■ (14.) Applying these principles to this case, Defendants made a sufficient showing to shift the burden to the State under *Delgado*. Defendants alleged without contradiction by the State that the first charges were dismissed on the eve of trial as the six-month rule was about to run. This put the burden on the State to demonstrate its good faith and show that it did not take its actions to circumvent the six-month rule or for other bad reasons. *See State v. Ericksen*, 94 N.M. 128, 130, 607 P.2d 666, 668 (Ct.App.1980) (court can intervene when State attempts to utilize nolle prosequi to forum shop).

■ (15.) The court below was apparently persuaded that the real motivating factor for the nolle prosequi was Mr. Runnels' belief that the prosecution should not appear politically motivated and that Mr. Runnels had a subjective good-faith belief that this reason was a proper one. While this reason would appear to negate a finding that the prosecutor was trying to circumvent the six-month rule, the court below made no findings about that particular issue. Most of the court's ruling was based on an understandable misinterpretation of the *Lucero* case, as explained above, that led to a misapplication of the law in this area.

(16.) However, there was ample evidence that would have supported a finding of either a general intent to circumvent the six-month rule, or a *Lucero*-type lack of preparedness leading to the dismissal, which is a specific example of the general rule. Defendants recite this evidence in their briefs for the purpose of supporting the trial court's ultimate ruling. Defendants point particularly to the facts that the cases were dismissed on the eve of trial when the prosecutor had not subpoenaed his witnesses. Under these circumstances, we believe that it is appropriate to remand the matter to the trial court to refind the facts in accordance with the law set forth in this opinion. No new evidence need be taken.

*Conclusion*

(17.) The dismissal of the indictments is reversed, and the case is remanded for the trial court to refind the facts and apply them consistently with the law stated herein.

(18.) **IT IS SO ORDERED.**

APODACA, C.J., and FLORES, J., concur.