2008-NMCA-008

176 P.3d 330

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Richard NEAL, Defendant–Appellant.**

No. 26,879.

Court of Appeals of New Mexico.

Nov. 6, 2007.

Certiorari Denied, No. 30,773,
Jan. 4, 2008.

OPINION

SUTIN, Chief Judge.

{1} Defendant Richard Neal argues that: (1) the State's nolle prosequi of his charges from magistrate court and subsequent refiling of the charges in district court were done for the improper purpose of avoiding the running of the six-month rule, and thus his charges should be dismissed; and (2) there was insufficient evidence to convict him of driving while intoxicated (DWI). We are not persuaded by either argument and affirm.

**BACKGROUND**

{2} Defendant was charged in magistrate court on November 4, 2005, with aggravated DWI, contrary to NMSA 1978, § 66–8–102 (2005) (amended 2007), failure to maintain a traffic lane, contrary to NMSA 1978, § 66–7–317 (1978), and impeding traffic, contrary to NMSA 1978, § 66–7–305 (2003). On November 16, Defendant filed a waiver of appearance in magistrate court, which commenced the running of the six-month rule in magistrate court, pursuant to Rule 6–506(B)(1) NMRA. During a subsequent pretrial conference, Defendant moved to suppress evidence. Before the magistrate court ruled on the motion, the State filed a nolle prosequi on January 7, 2006, and filed the same charges in district court on January 19, 2006.

{3} When Defendant's bench trial occurred on May 26, 2006, in district court, he moved to dismiss the charges, arguing that the six-month rule began to run on November 16, 2005, in magistrate court and had expired on May 17, 2006. Defendant argued that allowing the State to file a nolle prosequi and refile charges in district court after Defendant filed a motion to suppress allows the State to punish Defendant for lawfully filing a motion to suppress. Defendant also argued that it is more expensive for him and for the courts to allow the procedure used by the State, which is contrary to the purpose of the Rules of Criminal Procedure. *See* Rule 5–101(B) NMRA (stating that it is the purpose of the Rules of Criminal Procedure to eliminate unjustified expense and delay). The district court denied the motion and noted that it had stated many times before that it would dismiss cases where the State

Gary K. King, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Appellee.

Wagner, Ford & Associates, Kenneth R. Wagner, L. Helen Bennett, Albuquerque, NM, for Appellant.

had not filed the nolle prosequi within sixty days of when the rule began to run in magistrate court, which was not the circumstance in the case at hand.

{4} On the merits of the charges, Officer Andy Munoz testified that he observed Defendant's vehicle traveling about five miles an hour below the posted speed limit and he also saw the vehicle cross over the shoulder line three times. The traffic stop occurred at 1:01 a.m. When Officer Munoz pulled Defendant over, he noticed that Defendant smelled of alcohol and had bloodshot, watery eyes. Defendant told the officer that he had a couple of drinks. The officer had Defendant perform standardized field sobriety tests, including the walk-and-turn test and the one-leg stand test. According to the officer, Defendant failed to properly perform the walk-and-turn test: he took six steps instead of the eighteen total steps he was instructed to take, he "failed to maintain the stance" during the instruction phase, and he moved his arms away from his side even though he was instructed to keep his arms down at his side. During the one-leg stand test, according to the officer, Defendant exhibited two signs of intoxication: swaying noticeably and moving his hands away from his side.

{5} The officer arrested Defendant, took him to the police station, and read Defendant the Implied Consent Advisory. Defendant remained silent when asked if he agreed to provide a breath sample, and then requested to read the Implied Consent Advisory. After the officer ascertained from Defendant that he understood what the officer had read, the officer interpreted Defendant's request to read the advisory and his failure to respond to the officer with "yes" or "no" as a refusal to provide a breath sample and took Defendant to jail.

{6} Defendant also testified, stating that he was surprised when the officer told him that he was pulled over for "minimum speed," that he did not think he was driving impaired, that he had a bad back and he told the officer so, which is why he failed the one-leg stand test, and that he did not remember the walk-and-turn test. Defendant testified that he was calling his wife when he was pulled over, which was likely why he was weaving. Defendant testified that he had consumed maybe four beers the previous day, between 3:30 and 9:00 p.m. Defendant also testified that he did not refuse to take the breath test, but that he told the officer that he did not understand the Implied Consent Advisory and wanted to read it himself.

{7} The district court found Defendant guilty of DWI and failure to maintain a traffic lane. The impeding traffic charge was dismissed. Defendant appeals both the denial of his motion to dismiss on six-month rule grounds and his conviction of DWI on substantial evidence grounds. We address both arguments in this opinion.

## DISCUSSION

### The Prosecutor Presented a Valid Reason for Filing a Nolle Prosequi and Thus, the Six–Month Rule Was Not Violated

{8} Whether the State properly filed a nolle prosequi is a mixed question of law and fact, which we review de novo, because we are focusing on whether there was a valid, legal justification for the nolle prosequi. *State v. Kerby*, 2001–NMCA–019, ¶ 15, 130 N.M. 454, 25 P.3d 904.

{9} In misdemeanor DWI cases, both the magistrate court and the district court have concurrent jurisdiction. *State v. Ahasteen*, 1998–NMCA–158, ¶ 21, 126 N.M. 238, 968 P.2d 328. "Prosecuting attorneys . . . have the discretion to choose in which court to bring a criminal action." *Id.* ¶ 22. Further, for "good and sufficient reasons, a criminal prosecution may be terminated and subsequently reinstituted," even if the prosecution is reinstituted in a different court with concurrent jurisdiction. *State ex rel. Delgado v. Stanley*, 83 N.M. 626, 627, 495 P.2d 1073, 1074 (1972); *State v. Carreon*, 2006–NMCA–145, ¶ 7, 140 N.M. 779, 149 P.3d 95. However, when a prosecutor follows such a course of procedure for the purpose of delay or to circumvent operation of the six-month rule, we "look past the form to the substance and hold that the operative date which commenced the running of the period laid down in the rule was . . . the original [date in the first prosecution]." *Delgado*, 83 N.M. at 627–28, 495 P.2d at 1074–75. If a defendant claims that the State has filed a nolle prose-

qui and reinstituted charges in order to circumvent the six-month rule, then the burden is on the State "to demonstrate its good faith and show that it did not take its actions to circumvent the six-month rule or for other bad reasons." *State v. Bolton*, 1997–NMCA–007, ¶ 14, 122 N.M. 831, 932 P.2d 1075.

{10} In *State v. Heinsen*, 2005–NMSC–035, ¶ 23, 138 N.M. 441, 121 P.3d 1040, our Supreme Court suggested that prosecutors file a nolle prosequi after an adverse ruling on a motion to suppress in magistrate court. The Court held that the State has no statutory or constitutional ground to appeal a suppression order of a magistrate court, and the Court refused to apply the "practical finality exception to the final judgment rule" because "the State may obtain judicial review of such a suppression order by filing a nolle prosequi to dismiss some or all of the charges in the magistrate court after the suppression order is entered and refiling in the district court for a trial de novo." *Id.* ¶ 1.

{11} In *Heinsen,* the State had not actually filed a nolle prosequi, but rather had attempted to appeal from the grant of a motion to suppress in magistrate court. *Id.* ¶¶ 2–3. Stating that "[a]t any time prior to trial, the State may dismiss a case without prejudice by filing a nolle prosequi[,]" *id.* ¶ 23, the Court still recognized that this procedure might result in claims that the six-month rule is being circumvented.

> The district court may inquire into the reasons for the dismissal to resolve the conflict between the policies underlying the six-month rule and the prosecutor's discretion to decide where to prosecute criminal charges and otherwise manage the prosecution. Ordinarily, however, filing a nolle prosequi ends the previous proceeding and allows a new six-month period to run provided there was a reasonable basis to file the nolle prosequi. When the State has such a basis, the trial court should grant the dismissal and permit a new six-month rule to run.
>
> In light of the State's strong interest in enforcing its statutes and managing criminal prosecutions, we hold that a new six-month rule period should begin to run when the State files a nolle prosequi fol-
> lowing a suppression order by a magistrate court and refiles in district court. If the State can establish that it has acted in order to preserve its right to appeal an order suppressing evidence, which is substantial proof of a material fact in the proceeding, and that it is not doing so for the purpose of delay, the six-month rule should commence six months after the date of arraignment, or waiver of arraignment[ ] on the indictment or information[,] or under any other applicable provision of Rule 5–604.

*Id.* ¶¶ 26–27 (citations omitted).

{12} In the case at hand, the State argued below that the nolle prosequi was filed under the dictates of *Heinsen*, because Defendant filed a motion to suppress. Defendant argues that *Heinsen* does not apply because the magistrate court had not granted Defendant's motion to suppress at the time that the State filed its nolle prosequi. Defendant argues that instead, the State dismissed the original proceeding after Defendant filed his motion to dismiss because at that point it became clear to the State that Defendant refused to plead guilty to the charges, making this case more akin to *Carreon*. *See Carreon*, 2006–NMCA–145, ¶ 1, 140 N.M. 779, 149 P.3d 95 (holding that the six-month rule was violated where the State filed a nolle prosequi about three weeks before the six-month rule ran and refiled the charges in district court based on a policy of the district attorney's office to dismiss and refile such DWI cases when it was determined that the case would not settle). Defendant also argues that the State's motive was to punish Defendant for filing a motion to suppress.

{13} In response to Defendant's arguments regarding *Carreon*, we find the case at hand distinguishable for several reasons. In this case, the State argued a reason for the nolle prosequi which had been specifically suggested by our Supreme Court, rather than a district attorney's policy of filing a nolle prosequi when it became clear that a case would not settle. *See id.* ¶ 10 (stating that this Court would "not comment on the propriety of the [State's] policy"). Further, while the State had claimed in *Carreon* that it did not become clear that the defendant

would not plead guilty in magistrate court until the date upon which it filed the nolle prosequi, there was no evidence in the record of any attempt to negotiate a plea during the prior five months. *Id.* ¶ 9. Additionally, and equally as significant, the State in *Carreon* waited until less than a month from the expiration of the six-month rule to file the nolle prosequi in magistrate court. *Id.* ¶¶ 1, 9. In the current case, the State filed the nolle prosequi less than two months after the six-month rule began to run, and after a motion to suppress had been filed at a pretrial hearing and was not ruled on at that time. Given that the district court stated on the record that it had stated on many occasions that the State should file nolle prosequis in magistrate court within sixty days of the date when the six-month rule began to run, and given that the magistrate court had not yet ruled on Defendant's motion to suppress, the State had a reason to file the nolle prosequi when it did because it was nearing sixty days from the date that the six-month rule began to run. These distinctions are significant, especially when one also considers *Heinsen.*

{14} We recognize, as Defendant points out, that there is a distinction between the present case and the facts in *Heinsen,* because in this case the magistrate court had not yet ruled on Defendant's motion to suppress, and thus, arguably, the procedure in this case was not used to preserve an appeal from such an adverse ruling. *Cf. Heinsen,* 2005–NMSC–035, ¶ 27, 138 N.M. 441, 121 P.3d 1040 (holding that a new six-month period begins to run after a nolle prosequi and new charges are filed "following a suppression order by a magistrate court," and stating that the Supreme Court construes Rule 5–604 to facilitate the State's challenge to a suppression order because it cannot create a right of appeal). Nonetheless, in the end, we find this distinction to be insignificant. At the point at which a motion to suppress is filed, the State is faced with a real possibility that it will have to nolle pros and refile the charges in district court, in which case filing the nolle prosequi before the motion to suppress is ruled on ultimately speeds up the criminal process, at least for defendants with meritorious grounds for suppression. Thus,

the purpose behind the six-month rule, to avoid protracted prosecutions, is met when the State files a nolle prosequi before the motion is ruled on. As stated in *Bolton,* "[p]rosecutors may ordinarily do what they wish[,] unless there is a bad reason for what they do, in which event the court will supervise it in a way that might prevent the prosecution." 1997–NMCA–007, ¶ 11, 122 N.M. 831, 932 P.2d 1075. Given that our Supreme Court has decreed that the State has a valid, legal justification for filing a nolle prosequi and refiling charges in district court when the magistrate court suppresses evidence, we cannot say that the same procedure after a motion to suppress, but before a potential suppression order, transforms the State's motive into a "bad" or invalid one.

{15} Defendant also argues that allowing this procedure is contrary to the purposes of the Rules of Criminal Procedure, which "are intended to provide for the just determination of criminal proceedings[, and] shall be construed to secure simplicity in procedure, fairness in administration[,] and the elimination of unjustifiable expense and delay." Rule 5–101(B). Defendant argues that this procedure imposes extra expenses on both him and the district court. We understand and sympathize with Defendant's plight, but we read *Heinsen* to say that these expenses, as well as the delay, were not unjustifiable under the Rule 5–101(B) rubric. *See Heinsen,* 2005–NMSC–035, ¶ 28, 138 N.M. 441, 121 P.3d 1040 (recognizing that "[w]hile this procedure may be less convenient than a direct appeal, it is consistent with our constitution, statutes, and rules").

{16} Defendant further argues that under this procedure, the State could wait until just before the six-month rule ran in magistrate court to file a nolle prosequi and refile charges in the district court and then get an entirely new six-month period within which to bring charges, "merely because the defendant files a motion." While this situation arguably could occur, for example, if a defendant filed a motion to suppress toward the end of the six-month period or if the judge did not rule on the motion for a protracted period of time, we do not envision it being a common occurrence. Moreover, if there

were grounds to claim that the State did somehow file a nolle prosequi for an improper reason, even though it did so in response to a motion to suppress, we do not read *Heinsen* to preclude an analysis of "the conflict between the policies underlying the six-month rule and the prosecutor's discretion." *Id.* ¶ 26.

{17} Finally, Defendant argues that he loses one level of appeal when the State is allowed to nolle pros in magistrate court and refile in district court. However, we rejected this argument in *Ahasteen*, 1998–NMCA–158, ¶ 27, 126 N.M. 238, 968 P.2d 328. "Defendant's constitutional right to … an appeal is satisfied by allowing him to appeal a conviction or adverse ruling to this Court." *Id.*

{18} This case is controlled by *Heinsen.* We are not persuaded that the State lacked a valid reason for filing the nolle prosequi in magistrate court and refiling the charges in district court. In this case, the State, in essence, was preserving its right to appeal a suppression order. Thus, a new six-month period began to run in the district court and there was no violation of the six-month rule in this case.

**There Was Sufficient Evidence to Support the DWI Conviction**

{19} In reviewing a claim of insufficient evidence, we must determine whether there is substantial evidence of either a direct or a circumstantial nature to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to conviction. Substantial evidence is that which is acceptable to a reasonable mind as adequate support for a conclusion. We review the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences to uphold a verdict of conviction. The test is not whether substantial evidence would support an acquittal, but whether substantial evidence supports the verdict actually rendered. In analyzing the evidence under that standard, we disregard conflicts in the evidence that would have supported a contrary verdict.

*State v. Sanchez*, 2001–NMCA–109, ¶ 14, 131 N.M. 355, 36 P.3d 446 (internal quotation marks and citations omitted).

{20} When reviewing the sufficiency of the evidence, "we do not reweigh the evidence or substitute our judgment for that of the [factfinder]." *State v. Neatherlin*, 2007–NMCA–035, ¶ 8, 141 N.M. 328, 154 P.3d 703. "Evidence of a direct or circumstantial nature is sufficient if a reasonable mind might accept [the evidence] as adequate to support a conclusion." *State v. Soto*, 2007–NMCA–077, ¶ 11, 142 N.M. 32, 162 P.3d 187 (alteration in original) (internal quotation marks and citation omitted), *cert. denied*, 2007–NMCERT–006, 142 N.M. 15, 162 P.3d 170. Whether there is sufficient evidence to support a conviction is a question of law which we review de novo. *Neatherlin*, 2007–NMCA–035, ¶ 8, 141 N.M. 328, 154 P.3d 703.

{21} Defendant was convicted of DWI under Section 66–8–102(A), which reads: "It is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." Our case law and our Supreme Court's Uniform Jury Instruction have phrased this statutory language as follows:

A person is under the influence of intoxicating liquor if "as a result of drinking liquor [the driver] was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to [the driver] and the public."

*Sanchez*, 2001–NMCA–109, ¶ 6, 131 N.M. 355, 36 P.3d 446 (alterations in original) (quoting UJI 14–4501 NMRA). The foregoing standard has the shorthand nomenclature of "impaired to the slightest degree."

{22} We have upheld convictions under the foregoing standard in cases analogous to the one at hand. *See Soto*, 2007–NMCA–077, ¶¶ 3–4, 34, 142 N.M. 32, 162 P.3d 187 (holding that there was sufficient evidence of DWI under the impaired-to-the-slightest-degree standard even though the officers observed no irregular driving, the defendant's behavior was not irregular, he was cooperative, and no field sobriety tests were conducted, given that the defendant "had red, bloodshot, and

watery eyes, as well as slurred speech and a very strong odor of alcohol on his breath," the defendant admitted drinking, the officers observed several empty cans of beer where the defendant had been, and the officers testified that he was definitely intoxicated); *State v. Gutierrez*, 1996–NMCA–001, ¶ 4, 121 N.M. 191, 909 P.2d 751 (holding that there was sufficient evidence to convict under Section 66–8–102(A) where "[the d]efendant was weaving into other traffic lanes; [the d]efendant narrowly missed hitting a truck; [the d]efendant smelled of alcohol and had bloodshot, watery eyes; [the d]efendant failed three field sobriety tests; [the d]efendant admitted drinking alcohol and smoking marijuana; and the officers believed that [the d]efendant was intoxicated"); *State v. Ruiz*, 120 N.M. 534, 535, 540, 903 P.2d 845, 846, 851 (Ct.App.1995) (upholding the district court's conclusion that there was sufficient evidence of DWI under the impaired-to-the-slightest-degree standard where the defendant's vehicle weaved out of its lane, the defendant had watery, bloodshot eyes, smelled of alcohol, had slurred speech, admitted drinking, and performed field sobriety tests with mixed results). In *Sanchez*, this Court affirmed a conviction where the proof that the defendant was under the influence of intoxicating liquor was "marginal at best." *Sanchez*, 2001–NMCA–109, ¶ 16, 131 N.M. 355, 36 P.3d 446.

**{23}** Defendant argues, however, that the standard that the State only be required to prove that a defendant is impaired "to the slightest degree" is not found in the statute and asserts that the statute has been impermissibly broadened by judicial interpretation of the statute. Defendant argues that this standard allows conviction on less proof than that required for a conviction of DWI beyond a reasonable doubt. Defendant further argues that the wording in the statute and judicial interpretation of that language to mean "impaired to the slightest degree" creates an ambiguity and fails to provide the fair warning and guidance demanded of criminal laws under the Due Process Clauses of the United States and New Mexico Constitutions. U.S. Const. amends. VI, XIV; N.M. Const. art. II, § 18.

**{24}** The particular problem Defendant has with the interpretation of the statutory language is that the factfinder is permitted to engage in ad hoc determinations as to a degree of impairment that allow standardless determinations of guilt, including determinations based on the unacceptable notion that anyone who takes a drink is impaired. These concerns, Defendant argues, require application of the rule of lenity and constitutionally require a fairer and more objective standard for the factfinder—a statute that gives a more narrow and specific warning of criminal behavior, together with a requirement of objective measurements of proof as to a degree of influence. Defendant cites *State v. Ramos*, 116 N.M. 123, 127, 860 P.2d 765, 769 (Ct.App.1993), for the general proposition, with which we do not disagree, that "a statute must provide fair and adequate warning to a person of ordinary intelligence of the conduct which is prohibited." However, Defendant does not argue that the statute itself is unconstitutionally vague or impermissibly broad, only that our cases have impermissibly broadened the statute. We review questions of statutory construction and questions of law de novo. *State v. Romero*, 2006–NMSC–039, ¶ 6, 140 N.M. 299, 142 P.3d 887, *cert. denied*, —— U.S. ——, 127 S.Ct. 1494, 167 L.Ed.2d 228 (2007); *State v. Duran*, 2005–NMSC–034, ¶ 19, 138 N.M. 414, 120 P.3d 836.

{25} The impaired-to-the-slightest-degree standard can be traced back to 1938 in New Mexico, when our Supreme Court construed for the first time a newly enacted statute forbidding driving while "'under the influence of intoxicating liquor.'" *State v. Sisneros*, 42 N.M. 500, 506, 82 P.2d 274, 276 (1938) (quoting Section 11–802, N.M. Comp. Sts. 1929). Prior to 1929, the only statute aimed at prohibiting comparable behavior forbade any person from driving "'while in an intoxicated condition.'" *Id.* at 506, 82 P.2d at 277 (quoting Section 11–226, N.M. Comp. Sts. 1929). The Court held that "[n]o doubt the difficulty of establishing intoxication caused the [L]egislature of 1929 to enact Sec. 11–802," which only required proof of the influence of intoxicating liquor. *Id.* The Court relied on the reasoning from a case from

another jurisdiction analyzing a similar change in statutes, which rejected an argument close to that of Defendant in the present case.

It is appellant's claim that this means in effect under the influence of intoxicating liquor to the extent of impairing to an appreciable degree his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties and using reasonable care, would operate a similar vehicle under similar conditions. It is the contention of the state, on the other hand, that the law means any influence of intoxicating liquor, however slight, and the trial court instructed the jury on this latter theory.

. . . .

The Penal Code of 1913 . . . prohibited any person who is intoxicated from driving a motor vehicle. . . . In 1927 . . . the language was changed so that it read under the influence of intoxicating liquor. Our Legislature, it will be seen, required at first that the offender should be under the influence of liquor to the point of actual intoxication, but evidently became convinced that many persons who had not yet arrived at that state were a menace to public safety when driving a motor vehicle, and in order so far as possible to remove danger from an admixture of liquor and gasoline provided that any person influenced by the former, without specifying the extent to which such influence must go, must himself abstain from using the latter in a motor vehicle.

It is a truism that a person who is even to the slightest extent under the influence of liquor, in the common and well-understood acceptation of the term, is to some degree at least less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself and the public. * * * The Legislature has placed no limitation on the extent of the influence required, nor can we add to their language.

Nor will it follow, as appellant seems to fear, that every man who has taken a drink falls within the ban of the statute. If that drink does not cause him to be influenced in the ordinary and well-understood meaning of the term, he is not affected by the law.

*Id.* at 506–07, 82 P.2d at 277–78 (quoting *Hasten v. State,* 35 Ariz. 427, 280 P. 670 (1929)) (internal quotation marks omitted). Agreeing with this analysis in *Hasten,* our Supreme Court defined "under the influence" to mean "to the slightest degree, . . . less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself and the public." *Id.* at 507, 82 P.2d at 278 (internal quotation marks and citation omitted).

{26} First, we note that it was our Supreme Court which construed "under the influence" in *Sisneros,* and thus we must follow that construction. *See State v. Carlos,* 2006–NMCA–141, ¶ 17, 140 N.M. 688, 147 P.3d 897 (stating that this Court follows applicable precedents of our Supreme Court). Further, we determine that the language "under the influence of intoxicating liquor" in Section 66–8–102(A) gives fair and adequate notice that the standard first set forth in *Sisneros* is the proper measure for "under the influence." The statute gives notice, according to the plain meaning of the word "influence," that the Legislature intends to criminalize a condition less than intoxication, but "influenced" to any degree by alcohol, no matter how slight. *See Webster's New College Dictionary* 569 (1995) (defining the verb "influence" as "[t]o cause a change in the character, thought, or action of"). We point out that the Legislature has not amended Section 66–8–102(A) after our Supreme Court construed "under the influence" in *Sisneros,* which further suggests that *Sisneros* properly construed the Legislature's intent. *See State Farm Mut. Auto. Ins. Co. v. Progressive Specialty Ins. Co.,* 2001–NMCA–101, ¶ 17, 131 N.M. 304, 35 P.3d 309 (relying to some degree on the Legislature's lack of an amendment, after a judicial interpretation of a statute, to bolster the conclusion that the interpretation was correct). Thus, the judicial formulation of less able, to the slightest

degree, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety is a proper construction of Section 66–8–102(A). We disagree with Defendant's argument that the judicial interpretation of the statute is more broad than the Legislature intended.

{27} Defendant also complains that the "slightest degree" interpretation of Section 66–8–102(A), when combined with the lack of objective proof that Defendant was affected by alcohol, such as a blood or breath test, allows a conviction on less evidence than proof beyond a reasonable doubt, thereby violating Defendant's due process rights. We reject this argument. The Legislature intended to allow a conviction under these circumstances, even without a breath or blood alcohol content test, and nothing about allowing a conviction under these circumstances lowers the standard of proof. The lack of blood or breath test results does not invalidate a conviction under Section 66–8–102(A). Scientific proof of Defendant's blood or breath alcohol content is not required. The Legislature criminalized driving a vehicle within the State of New Mexico when the driver "is under the influence of intoxicating liquor." § 66–8–102(A). The Legislature was not concerned with the amount of alcohol in the defendant's body when enacting Subsection (A); rather, it was concerned with the effect or influence of the alcohol on the defendant's ability to drive. That there was no scientific proof or, as Defendant puts it, "objective proof" to measure the level or degree of influence of alcohol does not mean that there was a conviction on less than sufficient evidence to prove guilt beyond a reasonable doubt. Given the testimony as to Defendant's driving behavior, physical condition, admission of drinking, and performance on the field sobriety tests, the factfinder could rely on common knowledge and experience to determine whether Defendant was under the influence of alcohol. *See State v. Baldwin,* 2001–NMCA–063, ¶ 16, 130 N.M. 705, 30 P.3d 394 (pointing out that a factfinder can rely on "human experience" in deciding whether a defendant was under the influence and could "drive an automobile in a prudent manner"); *Sanchez v. Wiley,* 1997–NMCA–105, ¶¶ 2, 19, 124 N.M. 47, 946 P.2d

650 (holding that a witness could rely on his knowledge in testifying that the defendant was "drunk"). We are not persuaded by Defendant's argument that the impaired-to-the-slightest-degree standard combined with the fact that no "objective" evidence of the effect alcohol is having on driving is required to prove that Defendant was "under the influence" of alcohol violates due process or allows a conviction on less than proof beyond a reasonable doubt.

{28} We are also unpersuaded that the impaired-to-the-slightest-degree standard is so broad as to fail to give fair and adequate notice to a person of what constitutes a violation of the statute. Little question exists in our mind that drivers are well aware that the risk of a DWI investigation and arrest increases when the driver's breath smells of alcohol, or when the driver has bloodshot, watery eyes. Particularly when combined with driving behavior indicating unsafe driving or violation of driving laws, we believe that drivers are well aware that these conditions place the driver at substantial risk of a DWI investigation and arrest. While it may well be true that not everyone who takes a drink is impaired to a culpable degree, unless and until the Legislature changes the wording of Section 66–8–102(A), the statute and case law permit a factfinder to consider established indicators of impaired driving as shown by the State here. *See Sisneros,* 42 N.M. at 506–07, 82 P.2d at 277–78 (relying on *Hasten,* stating that "[a] person who has taken a drink of intoxicating liquor is not necessarily under its influence"). We are not prepared to invalidate the *Sisneros* standard on the ground that a driver who has consumed intoxicating liquor may not readily recognize the point at which his or her ability to drive is affected or impaired to a culpable degree. Further, we see no constitutional due process bar, and Defendant has not cited even remotely analogous authority which would indicate that any such bar exists that would forbid a factfinder from determining DWI guilt under Section 66–8–102(A) and the *Sisneros* standard based on indicators of impaired driving. Nor do we see an ambiguity that would require application of the rule of lenity. *See State v. Ogden,* 118 N.M. 234,

242, 880 P.2d 845, 853 (1994) ("The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute.").

{29} We hold that sufficient evidence supports the verdict. Disregarding the contrary evidence, the evidence which supports a reasonable inference that Defendant was under the influence of alcohol includes that the officer observed Defendant veer over the shoulder line three times, Defendant smelled of alcohol and had bloodshot and watery eyes, Defendant admitted drinking, Defendant showed signs of intoxication during the field sobriety tests, including that he swayed, he did not follow the officer's instructions on any of the tests, he lifted his arms away from his side during the one-leg stand test, and he "failed to maintain the stance" during the walk-and-turn test, and the officer believed Defendant was under the influence of alcohol. Additionally, even though Defendant testified that he did not refuse to take any test, the officer testified that Defendant said he did not want a DWI on his record, and the district court could have inferred from this statement a consciousness of guilt. The court could have disregarded Defendant's testimony that he weaved while driving because he was distracted by his cell phone, as well as his testimony that he was not impaired and that his performance on at least one of the field sobriety tests was affected by his back condition. Based on the foregoing, we conclude that Defendant's conviction is based on substantial evidence that Defendant was under the influence of intoxicating liquor while driving.

**CONCLUSION**

{30} Defendant's convictions for DWI and failure to maintain a traffic lane are affirmed.

{31} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and MICHAEL E. VIGIL, Judges.