This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                            **No. A-1-CA-34417**

**KENNETH B. MURRAY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRENCH, Judge.**

{1}     Defendant Kenneth B. Murray was charged with negligent child abuse not resulting in death or great bodily harm and aggravated driving while intoxicated (DWI). Defendant was convicted by jury trial on February 14, 2014, and appeals on four grounds: (1) that admission of evidence about the horizontal-gaze nystagmus (HGN) test as evidence of intoxication constitutes plain error, (2) that there was insufficient evidence to support the willful refusal element of the aggravated DWI charge, (3) that the negligent child abuse jury instruction improperly stated the negligence standard and was therefore fundamental error, and (4) that Defendant's trial counsel was ineffective. We affirm Defendant's convictions.

**BACKGROUND**

{2}     In the early morning of September 21, 2013, Alamogordo, New Mexico police officers were dispatched to a house party due to noise complaints. Defendant was present at this party. While responding to the noise complaint, both Officer Amber Compary and Officer Ryan Glidden encountered Defendant at the residence. Both observed him to be "stumbling," "swaying," and "slurring his speech." Officer Glidden observed Defendant walking to his car with a child and advised him that he was too intoxicated to drive safely. Defendant apparently returned to the party. At approximately 2:15 a.m. on September 21, 2013, Officer Amber Compary stopped Defendant while he was driving in the vicinity of the party for failing to stop at a stop

sign and failure to maintain his traffic lane. Defendant had his ten-year-old son in the vehicle. Officer Compary observed Defendant to have slurred speech, an odor of alcohol emitting from his person, and bloodshot eyes. Defendant stated that he had been drinking, but had stopped drinking at around nine o'clock the evening of September 20, 2013. Officer Compary performed field sobriety tests on Defendant, including an HGN test, the walk-and-turn test, and the one-leg stand test. After Defendant failed to satisfactorily execute the field sobriety tests, Officer Compary placed Defendant under arrest for DWI. While at the police station, Defendant was given the implied consent advisement regarding a breath test. Defendant initially agreed to a breath test and Officer Compary prepared the breathalyzer machine. When Officer Compary went to the booking room to get Defendant for the test, Defendant appeared to be asleep. She shook Defendant to wake him, and Defendant opened his eyes and looked at her, then closed his eyes again and turned over. Defendant was charged with aggravated DWI on the grounds that he refused a breath test and negligent child abuse not resulting in great bodily harm or death.

{3}      On January 2, 2014, Defendant filed four handwritten pleadings. In the first, entitled "affidavit of defense[,]" he stated that the party he attended on September 20, 2013, was "non alcoholic" and that during the party he was attacked by "a small group of people (approx. 6 to 7 males)" who were holding beer bottles, and that his memory

4

of the events and his actions after this point is "fragmented and distorted." In the second pleading, entitled "notice of d[i]minished capa[c]ity[,]" Defendant stated that "I was in fact injured as the result of an unprovoked assault w[h]ich did then reduce my physical and mental abilities beyond my control[,]" and that he "did not have physical or mental control in the quan[t]ity or quality to hold him to respon[s]ibility for his actions[,]" and that Defendant had "extrem[e]ly vague and unreliable memories of the time frame surrounding the instant case[.]" In the third pleading, entitled "motion to dismiss grand jury [indictment] for insufficiency of evidence[,]" Defendant stated that his behavior was "the product of debilitating menta[l]ly incapa[ci]tating injur[ies] susta[i]ned as a result of an unprovoked assault on [Defendant's] person by multiple assa[ilants] at a non alcoholic family and friend reunion." The fourth of these pleadings is entitled "motion for order to subpoena witnesses" and in it, Defendant requested that the court issue subpoenas for Chris Washington and Yvonne Chavez, although the nature of their proposed testimony was not described, and for a "[m]edical/psyc[h]iatric professional obtained by my defense coun[sel.]" Defendant also stated that the professional witness "should be selected after conference and concur[r]ence of the appropriate wit[ness] to testify by my defen[s]e coun[sel.]" The record does not show that the court took any action on these pleadings.

{4}     A jury trial was held on February 14, 2014, and Defendant was found guilty on both the aggravated DWI and the child abuse counts. Prior to the beginning of the trial, Defendant's counsel made a motion to withdraw on the grounds that Defendant had informed counsel that Defendant had "no confidence" in counsel and Defendant wanted different counsel and a continuance. The state objected to the continuance and the court denied both the motion to withdraw and the motion to continue.

{5}     At trial, the State called Officers Company and Glidden. Officer Company testified about the traffic stop, the field sobriety tests she performed on Defendant, and why she believed Defendant's performance indicated that he was impaired. Officer Company testified that one of the tests she performed was the horizontal-gaze nystagmus (HGN) test, that the purpose of the test is to look for "involuntary jerking of the eye," and that to her knowledge only alcohol or drug use could cause this involuntary jerking. Officer Glidden testified that he had encountered Defendant at a party earlier on the night of September 20-21, 2013, and that Defendant was "swaying" and "stumbling as he walked" to his truck with his son. Officer Glidden also testified that he had advised Defendant not to drive with his son.

{6}     Defendant then testified in his own defense. He stated that he had not been drinking on the night of September 20-21, 2013, and that he does not drink due to his religion. He further testified that he had fallen asleep while at the party and was

awakened by "a loud commotion." Defendant testified that he went outside the house where he encountered people who "didn't belong" and got into a "scuffle" with them. He testified that he was hurt, that people hit him with beer bottles, and that he still had scars from the encounter. Defendant testified that he had alcohol thrown on his shoulders, headpiece, and shirt, that he had blood on his shirt and face, and wounds on the right and left sides of his head. Defendant also testified that he had limited memory of the events during the traffic stop and at the police station.

{7}     The State called Officers Glidden and Compary as rebuttal witnesses. Officer Glidden testified that he had seen head wounds a number of times, in part because he had children, and that these wounds usually bleed "a lot." He also testified that he did not see blood on Defendant when he encountered him at the party, that he asked Defendant if he had been in a fight because he was "a little dirty," and that Defendant denied having been in a fight. Officer Compary also testified that she did not see any blood or wounds on Defendant.

{8}     Defendant was convicted of aggravated DWI and child abuse, and now appeals.

**ANALYSIS**

{9}     Defendant raises four issues in this appeal: (1) whether the district court's admission of the HGN testimony from Officer Compary was plain error; (2) whether the State presented sufficient evidence to meet the willful refusal element of the

7

aggravated DWI charge; (3) whether the child abuse jury instruction improperly stated the required intent; and (4) whether Defendant's trial counsel was ineffective.

**1.      The Admission of the HGN Testimony Was Not Plain Error**

{10}      Defendant did not object to the admission of the HGN testimony at trial so we review it under the plain error standard. *See State v. Lucero*, 1993-NMSC-064, ¶ 12, 116 N.M. 450, 863 P.2d 1071. "To establish plain error, the error complained of must have affected substantial rights although the plain errors were not brought to the attention of the judge." *Id. ¶* 13 (alteration, internal quotation marks, and citation omitted). To be considered plain error, the admission of the evidence must have led to "an injustice that creates grave doubts concerning the validity of the verdict" and the fairness of the trial. *Id.* ¶ 12 (internal quotation marks and citation omitted). Additionally, "the admission of evidence in a criminal trial must be declared prejudicial and not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Torres*, 1999-NMSC-010 ¶ 52, 127 N.M. 20, 976 P.2d 20 (internal quotation marks and citation omitted).

{11}      "HGN testing involves scientific knowledge," and "HGN evidence . . . must satisfy the requirements of [the] *Alberico-Daubert* [standard,]" such that the district

court has ensured that it is relevant and reliable. *Torres*, 1999-NMSC-010, ¶ 33. The district court heard no evidence about the reliability of HGN testing and the State concedes that the testimony about the nystagmus Defendant exhibited lacked the requisite foundation.

{12}     Although the HGN testimony was admitted in error, it is harmless error and therefore not reversible. In *Torres,* our Supreme Court held that the admission of HGN testimony was harmful error when the state presented the HGN test as the "most accurate" and the "one test that cannot be beat." *Id.* ¶ 53. In the instant case, however, the State presented other ample evidence of Defendant's intoxication, including testimony about Defendant's slurred speech, the odor of alcohol on his breath, and his inability to perform the walk-and-turn test and the one-leg stand test. All of this evidence alone could have supported Defendant's conviction without the testimony of the HGN test. *See e.g.*, *State v. Neal*, 2008-NMCA-008, ¶ 29, 143 N.M. 341, 176 P.3d 330 (holding sufficient evidence to convict the defendant on a DWI charge when the defendant smelled of alcohol, had bloodshot and watery eyes, veered over the shoulder line three times, swayed, and failed to follow officer instructions on field sobriety tests). Here, the HGN testimony was one piece of evidence amid other evidence that the State introduced to prove the DWI charge. It was not presented as the most definitive, reputable evidence of Defendant's intoxication as it was in *Torres*.

We cannot say that the admission of the HGN test led to an injustice that creates grave doubts concerning the validity of the verdict and the fairness of the trial or that it impacted substantial rights.

**2.      There Was Substantial Evidence to Support the Willful Refusal Element of the Aggravated DWI Charge**

{13}      Defendant argues that there was not substantial evidence to support the willful refusal element of the aggravated DWI charge. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661. Under substantial element review, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{14}      To prove aggravated DWI based on refusal to submit to a chemical test, the State must prove that Defendant "refus[ed] to submit to chemical testing . . . and in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor or drugs." NMSA 1978, Section 66-8-102(D)(3) (2016). The jury instruction regarding refusal to submit to chemical

10

testing, UJI 14-4510 NMRA, stated that the jury had to find "[D]efendant was conscious and otherwise capable of submitting to a chemical test[,] and . . . [D]efendant willfully refused to submit to a breath test."

{15} There was substantial evidence to support the willful refusal element of the aggravated DWI charge. Officer Compary testified that when she went to get Defendant from the booking room for the breath test, Defendant opened his eyes and looked at her. Officer Compary further testified that Defendant shortly thereafter was awake and responded to law enforcement and not cooperating. The jury could have found, based on this evidence, that he was conscious and otherwise capable of submitting to a chemical test.

**3.      The Child Abuse Instruction Did Not Constitute Fundamental Error**

{16} "The standard of review [the appellate courts] apply to jury instructions depends on whether the issue has been preserved." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. If it was not preserved, we "review for fundamental error." *Id.* Because there was no objection to the jury instruction regarding the child abuse count, we review for fundamental error. Fundamental error occurs only in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair

notwithstanding the apparent guilt of the accused." *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633.

{17} Defendant claims that the inclusion of the "knew or should have known" language in the jury instruction constituted fundamental error given the decision in *State v. Consaul*, 2014-NMSC-030, 332 P.3d 850. *Consaul* was decided on August 21, 2014, six months after Defendant's trial on February 14, 2014. *Consaul* involved a defendant charged with child abuse when his infant nephew suffered a neurological injury while the defendant was caring for the child. *Id.* ¶¶ 4-5. One of the state's theories was that the defendant had swaddled the child tightly and left him unattended for a lengthy amount of time, "face down," and that the defendant knew or should have known that this would be harmful to the child. *Id.* ¶¶ 14, 25. The Court reiterated that the correct standard to be used when determining whether a defendant committed negligent child abuse is criminal negligence, and that the statute is intended to punish "morally culpable acts and not mere inadvertence." *Id.* ¶ 36. The *Consaul* court further stated, "[t]ypical definitions of recklessness require an actor to consciously disregard a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* ¶ 37. *Consaul* "modif[ies] prior cases . . . in which courts have held that recklessness is not the culpability required for

12

the crime of negligent child abuse." *Id.* ¶ 38. The *Consaul* court also said with regard to the "knew or should have known" language as it appears in jury instructions, "we are doubtful about the continued vitality of 'knew or should have known' in our instructions, a subject [the appellate courts] will address in the near future." *Id.* ¶ 40.

{18}     The jury instruction used, UJI 14-604 NMRA, contained the following language:

> [D]efendant acted with reckless disregard. To find that [Defendant] acted with reckless disregard, you must find that [Defendant] knew or should have known . . . [D]efendant's conduct created a substantial and foreseeable risk, . . . [D]efendant disregarded that risk and . . . [D]efendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of [Child.]

Although this is the UJI that our Supreme Court found problematic in *Consaul*, we cannot say the jury was not instructed on recklessness or told that recklessness was not the culpability standard. The jury instruction contains both the language "knew or should have known," and the recklessness language regarding Defendant's conduct creating a substantial and foreseeable risk and Defendant being "wholly indifferent to the consequences of [his] conduct" on Child.

{19}     However, even if we were to find that *Consaul* applied to Defendant's case, and the jury instruction was erroneous because it implied that a civil negligence standard of culpability, it still does not rise to the level of fundamental error. We cannot say that Defendant is indisputably innocent and the inclusion of the "knew or should have

13

known" language does not make Defendant's child abuse conviction fundamentally unfair. The State provided sufficient evidence of Defendant's intoxication to support a DWI conviction, which we uphold here. A DWI conviction is a sufficient factual basis for a child abuse by endangerment conviction. *See State v. Orquiz,* 2012-NMCA-080, ¶ 8, 284 P.3d 418. Although *Orquiz* was decided before *Consaul*, there is nothing in *Consaul* that would suggest *Orquiz* is no longer good law. Driving while intoxicated with a child is the type of reckless conduct that the court in *Consaul* held to constitute criminally negligent behavior, that is, it "disregard[s] a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Consaul*, 2014-NMSC-030, ¶ 37. Therefore, even if *Consaul* would have applied retroactively to Defendant's case due to the "knew or should have known" language in the jury instruction, this jury instruction did not constitute fundamental error.

**4.      Defendant Was Not Denied Effective Assistance of Counsel**

{20}     Defendant argues that his trial attorney was ineffective because: (1) his trial attorney failed to object to improper testimony in the form of Officer Glidden's testimony that head wounds bleed "a lot," (2) the HGN testimony failed to put forward a theory of the case insisted on by Defendant, (3) his trial attorney failed to present

14

evidence corroborating Defendant's testimony and theory, and (4) his trial attorney failed to object to the child abuse instruction. Defendant has not made a prima facie case that his trial counsel was ineffective.

{21}     Whether counsel was ineffective is a question of law that we review de novo. *Patterson v. LeMaster,* 2001-NMSC-013, ¶ 14, 130 N.M. 179, 21 P.3d 1032. In an ineffective assistance of counsel claim, "the burden [is] on the defendant to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense." *State v. Dylan J.*, 2009-NMCA-027, ¶ 36, 145 N.M.719, 204 P.3d 44. "Defense counsel's performance is deficient if it falls below . . . that of a reasonably competent attorney." *Id.*¶ 37 (citations omitted). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted). "A defense is prejudiced if . . . there was a reasonable probability that the result of the trial would have been different" and that absent the errors of defense counsel, "the fact[-]finder would have had a reasonable doubt respecting guilt." *Id.* ¶ 38 (omission, internal quotation marks, and citations omitted).

{22}     First, Defendant argues that his trial counsel's failure to object to Officer Glidden's testimony about head wounds bleeding "a lot" and testimony about HGN

15

constituted ineffective assistance of counsel. On appeal Defendant appears to argue that he had a head injury that did not bleed; however, at trial Defendant himself testified numerous times that he was bleeding. Therefore his argument that counsel should have objected to Officer Glidden's testimony at trial is largely baseless, and counsel would have had no reason to object given Defendant's own testimony. Although admission of the HGN testimony for the purpose of proving intoxication without the requisite foundation was erroneous, failure to object to inadmissable testimony in and of itself is not ineffective assistance of counsel but falls within the rage of acceptable trial tactics. *State v. Martinez*, 1996-NMCA-109, ¶ 26, 122 N.M. 476, 927 P.2d 31. Defendant's counsel attempted to use the HGN testimony to bolster Defendant's claim of a head injury, asking Officer Company on cross-examination if she knew of other maladies that could cause nystagmus. Furthermore, even if this was an error on counsel's part, as we discussed above, the admission of this testimony did not prejudice the defense in such a way that the outcome would have been different had the HGN testimony not been admitted.

{23}    Second, Defendant argues that counsel failed to put forward a specific defense theory, namely that Defendant was injured in a fight which caused him to appear impaired and smell of alcohol. However, this theory was the basis for Defendant's case at trial. Defendant himself testified about being attacked, having beer thrown on

16

him, and having limited memory due to being hit on the head. Defense counsel's cross-examination of State witnesses focused on whether a head injury could cause symptoms similar to alcohol impairment. Defendant also argues that counsel's failure to call corroborating witnesses to support his defense theory was ineffective assistance of counsel. On the present record, we cannot eliminate the possibility that defense counsel did not call additional witnesses because they would not be credible or their testimony would not support Defendant's claims.

**{24}** Third, Defendant argues that counsel should have objected to the child abuse jury instruction. It is unclear on what grounds counsel could have objected to the jury instruction, since *Consaul* had not been decided at the time of Defendant's trial and the jury instruction was the UJI in use at the time.

**{25}** Defendant has not made a prima facie case that counsel was ineffective. We reiterate that our holding does not forestall Defendant from seeking collateral review on the basis of ineffective assistance of counsel. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 (stating that an ineffective assistance of counsel claim is more properly brought through a petition for habeas corpus when a full determination would require facts not in the record).

**CONCLUSION**

**{26}** We affirm.

{27}    **IT IS SO ORDERED.**

_____
                                        **STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**HENRY M. BOHNHOFF, Judge**